**People of the State of Illinois, Defendant in Error, v. Louis Watkins (Impleaded), Plaintiff in Error.**

**Gen. No. 50,600.**

First District, Fourth Division.

February 4, 1966.

H. A. Sanford, Jr., of Chicago, for plaintiff in error.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and George Samels, Assistant State's Attorneys, of counsel), for defendant in error.

MR. PRESIDING JUSTICE DRUCKER delivered the opinion of the court.

Defendant, Louis Watkins, was convicted after a jury trial of the unlawful sale of narcotic drugs and was sentenced to the penitentiary for not less than ten nor more than fifteen years. In this appeal defendant contends that he was not proven guilty beyond a reasonable doubt.

Defendant was arrested on March 7, 1963, for his alleged participation in the illegal sale of the narcotic drug heroin to Charles Perry, an informer and "special employee" of the Chicago Police Department. Perry testified that he was previously a narcotics addict but that he hadn't used any drugs for about three years; that he is "unemployed" but is a professional informer and has testified in courtrooms on numerous occasions; that on March 7 he went to the 11th Street Police Headquarters where he met Officers Donald Dura and Robert Lopez; that he was asked to strip and was searched; that after getting dressed he was given $25, two tens and five ones. The witness further testified that the three men drove to the vicinity of Madison and Leavitt where the officers parked and remained in their car, while he (Perry) went unaccompanied into a restaurant on the corner looking for a narcotics dealer named Chuck; that he was unable to locate "Chuck" but had a conversation with Elliot Willis and Horace Ferguson, who introduced him to the defendant. Perry then testified as to his conversation with defendant:

> I told Watkins I wanted to get two halves, that is, a sixteenth of heroin. He told me I could if I had the money and I told him I had it.

Perry also related that:

I gave him [defendant] the $25.00 and he gave the $25.00 to Ferguson and told him to take it across the street and get it changed. Ferguson left the restaurant and went across the street to the tavern. Ferguson came back in the restaurant and gave Watkins back the $25.00. I do not know whether the $25.00 Ferguson gave Watkins was the same $25.00 I gave Ferguson. I do not know if it was in the same denomination. Then Watkins told Ferguson to come and go with him and Ferguson and him and Ferguson [sic] went out of the restaurant.

. . . . . .

Then Watkins and Ferguson came back the front of the door and I came out of the restaurant. Watkins went to hand me the package and Ferguson told him that he would give it to me. Ferguson took the package and we [Perry and Ferguson] started down the street.[1]

When we got halfway down the street I took my cap off and the police officers turned the car around and when we got to the corner of Hoyne they jumped out and placed us under arrest . . . . I gave the tin foil package that I had to Officer Dura and told him that was the package I had purchased.[2] Willis had left our presence to get his outfit which is what you inject the heroin into you with. When he came back Officer Dura and Officer Lopez placed him under arrest. After they had put him in the car I seen Watkins drive by and I pointed him out to Officer Lopez and Officer Dura and they placed him under arrest.

---

[1] On redirect examination Perry testified that he "received the narcotics from Ferguson."

[2] It was stipulated that if Andrew Principe, a chemist, was called as a witness he would testify that the contents of this package (State's Exhibit 5) was a derivative of morphine.

Officer Dura testified and identified Charles Perry as a special employee of the police department. He corroborated those portions of Perry's testimony with respect to the events in the police station when the informer was given the money. He stated on cross-examination that from his parked car he could see only the exterior of the restaurant and that:

> Up to the point where I saw Willis and Ferguson leave the restaurant with Mr. Perry I had not seen the defendant Louis Watkins. I had not seen Mr. Watkins at the time Mr. Perry raised his hat to give the signal.

Officer Dura also testified that defendant at no time admitted selling the norcotics.

The testimony of Officer Lopez was substantially the same as that of Officer Dura. He also stated that at no time did he see the defendant in the company of Ferguson or Perry; that no money was found on the defendant when he was arrested; and that upon his arrest defendant was told that he was charged with selling narcotics, after which he replied: "I didn't sell any narcotics to anyone." Officer Lopez also testified that he had known the informer for approximately a year or two; that when he first met Perry he believed that Perry was a narcotics addict; and that based upon his experience of six years as an officer with the narcotics bureau and his observation of thousands of addicts, he was of the opinion that Perry was an addict on March 7, 1963.

Elliot Willis testified that on the date of this sale he was a drug addict. He twice stated that Perry handed the money to Ferguson while in the restaurant but later said that the defendant was the recipient thereof, and subsequently testified that the defendant did not return to the restaurant with Ferguson. He stated that: "Ferguson came back alone and Perry approached me for an outfit and I said I didn't have one."

392

Defendant testified in his own behalf and admitted being in the restaurant at the time and date in question with one Arthur Green, but denied any participation in the sale of narcotics or even having a conversation with Willis, Ferguson or Perry. He testified that he was in the restaurant for about fifteen minutes and then left with Green, stopping at a tavern and later at a pool hall, and that he was arrested thereafter while driving near Madison and Leavitt.

Defendant's primary assertion in support of his contention that he was not proven guilty beyond a reasonable doubt is that the only testimony of his participation in the sale of narcotics was that of the informer, Charles Perry, and that it was uncorroborated.

It is an established principle that the uncorroborated testimony of an addict-informer alone is insufficient to prove an accused guilty beyond a reasonable doubt of the unlawful sale of narcotics. People v. Bazemore, 25 Ill2d 74, 182 NE2d 649; People v. Boyd, 17 Ill2d 321, 161 NE2d 311. In the instant case only the informer, Perry, testified that defendant accompanied Ferguson to the restaurant with the foil package (that was later found to contain heroin) to consummate the sale. Officers Dura and Lopez, who were able to view the exterior of the restaurant from their parked car, both testified that they had not seen defendant prior to his arrest. Elliot Willis testified that defendant did not return to the restaurant with Ferguson (who was not called to testify). Moreover, the only corroboration of Perry's testimony that he gave defendant money was by Willis, an admitted narcotics addict, who twice stated that Perry gave Ferguson the money and later stated that defendant was the recipient thereof.

The instant case is distinguishable from People v. Martin, 63 Ill App2d 492, 211 NE2d 753, in which the same informer (Charles Perry) participated in a controlled purchase of narcotics. The court in that case held

that the evidence presented by Perry's testimony was sufficient to sustain the conviction because the essential elements of his testimony were substantiated by the police. In the instant case, however, there is no corroboration of that portion of Perry's testimony which implicated defendant in the sale of narcotics.

We therefore find that defendant was not proven guilty beyond a reasonable doubt. The judgment of the trial court is reversed.

Reversed.

ENGLISH and McCORMICK, JJ., concur.