People of the State of Illinois, Plaintiff-Appellee, v.
Lawrence Reddick, Defendant-Appellant.

Gen. No. 53,026.

First District, First Division.

March 10, 1969.

Sam Adam and Daniel D. Mangiamele, of Chicago, for
appellant.

William G. Clark, Attorney General of State of Illinois,
of Chicago (Fred G. Leach, Assistant Attorney General,

John J. Stamos, State's Attorney of Cook County, of Chicago, and Elmer C. Kissane, Assistant State's Attorney, of counsel), for appellee.

MR. PRESIDING JUSTICE ADESKO delivered the opinion of the court.

The defendant, Lawrence Reddick, was convicted in a bench trial for the sale of a narcotic drug in violation of chapter 38, section 22–3 of the Ill Rev Stats, and was sentenced to serve a term of not less than ten or more than ten years and one day in the Illinois State Penitentiary. The case was appealed directly to the Illinois Supreme Court and subsequently on March 11, 1968, was transferred to this court. The defendant urges that the judgment be reversed on the grounds that the inconsistency in the statements of a police officer raises a reasonable doubt as to the defendant's guilt, and that proof of defendant's guilt was not established beyond a reasonable doubt.

From the record it appears that on the evening of November 4, 1965, one Stephen Cox, a police informer, met with Officer James Arnold and another officer from the Narcotics Unit of the Chicago Police Department. After Cox was searched to determine he did not possess any narcotics or money, he was given a sum of marked money for the purpose of making a controlled purchase of narcotic drugs and also signed a receipt for such money. Cox then proceeded with the officers to the vicinity of the Burgundy Lounge at 6309 South Drexel Blvd., Chicago, Illinois. The police officers parked their unmarked car at 6338 South Drexel Blvd., about one-fourth block away from the Burgundy Lounge. Cox got out of the car on the east side of Drexel Blvd., and proceeded to the lounge while Officer Arnold stood in a doorway on the west side of Drexel. Cox testified the defendant and several other men were just coming out of the lounge as he (Cox) came up to the lounge en-

trance. After the defendant finished talking with these men, Cox stated that he and the defendant negotiated a sale of narcotics and that Cox gave defendant the marked money. According to Cox, defendant then went in the alley while Cox waited in front of the lounge with the other men. Reddick returned and gave Cox a tinfoil package, whereupon Cox left, returned to the police car and gave the package to the officers. On cross-examination, Cox swore that at no time did he walk into the tavern and further, that after taking the tinfoil package to the officers, he and the officers went to the front window of the lounge and he pointed defendant out to the officers. Cox also admitted he had met defendant for the first time about one week prior to the alleged sale while he was with a friend, but did not know the defendant personally.

Officer Arnold testified that he saw Cox on November 4, 1965, at which time he gave him ten dollars in pre-recorded money after searching him for narcotics and/or other money. Cox left the unmarked police car and went to the Burgundy Lounge, where the door opened and Cox either stepped in or stepped out. Arnold stated:

> "I don't know whether he got all the way in the tavern or not, but within a matter of a second or two Mr. Cox and a couple of other fellows and the defendant was on the sidewalk."

Arnold continued to testify that all the men were talking but he could not see what was transpiring, as he was about a quarter of a block away from the group. The defendant, so stated Arnold, went into the tavern entranceway, then came out through the package goods entranceway and went into the alley. About ten minutes later, defendant emerged from the alley and rejoined the group in front of the lounge. The defendant, Cox, and the others "huddled" together and then dispersed. Cox returned to the police vehicle and gave Arnold a tin-

foil package containing a white powder substance. Arnold stated that Cox and the others were never out of his sight. Officer Arnold, his partner and Cox walked to the Burgundy Lounge where Cox looked in the window and identified defendant as the man who sold him the tinfoil package, and who was the same person Arnold observed going in the tavern, coming out of the package goods store door and entering and returning from the alley. Arnold entered the lounge and arrested defendant, who was in the company of a female companion. On the woman's person was found two one-dollar bills of the prerecorded money. Two other one-dollar bills and a five-dollar bill were recovered from the cash register of the package goods store. (The package goods store was connected to the lounge by a passageway.) On cross-examination Arnold testified that defendant denied making any sale of narcotics and further, that no narcotics or prerecorded money was found on defendant's person. Mr. Voss, the operator of the package goods store, told Arnold he could not determine who gave him the other two prerecorded one-dollar and five-dollar bills. Arnold also was sure that the testimony he gave at the preliminary hearing was similar to his police report, and that he never saw the defendant before the day in question.

It is upon the testimony of Officer Arnold as to what he observed while awaiting the return of Mr. Cox that constitutes the basis of this appeal. At a preliminary hearing conducted on January 27, 1966, Arnold testified that he gave Cox the marked money, whereupon Cox proceeded to the Burgundy Lounge, *stayed for about ten minutes,* (emphasis added) consummated a controlled purchase of narcotics and returned to the squad car with a tinfoil package containing heroin. Arnold was emphatic that Cox actually went in the lounge and remained there

for approximately ten minutes. Relevant portions of Arnold's testimony at the preliminary hearing were as follows:

"DIRECT EXAMINATION

"Q. (By Assistant State's Attorney) What did he say to you, what did you say to him:

"A. (By Officer Arnold) Officer Williams and I met a police informer who stated that there was one of several people in the vicinity of 63rd and Drexel that he could find in the Burgundy Lounge located at 6309, and he would attempt to make a control purchase of narcotics from these people in question. We searched the informant, found him to be free of all money and narcotics. We gave him $10.00 in prerecorded funds; he signed a receipt for same. He got out of the car, walked to the Burgundy Lounge. He walked on the, walked down the east side of Drexel. I stood in the doorway on the west side of Drexel. *He went in the Burgundy Lounge, stayed for approximately ten minutes.* He walked back out, walked back to the squad car, joined Officer Williams and I and handed me one tin foil package and said." (Emphasis added.)

"CROSS EXAMINATION

"Q. (By Mr. Adam) All right. Now, you are telling the court that he told you he can make a sale, is that correct?

"A. (By Officer Arnold) That is right.

"Q. Make a buy?

"A. Yes, sir.

"Q. *He went, he went where?*

"A. *To the Burgundy Lounge.*

"Q. *He left your vision at that time, is that right?*

127

"A. *Yes sir; went to the tavern.*

"Q. *You don't know what he did in there?*

"A. *No.*

"Q. This is the same lounge when you went in it was crowded and full of people with leather jackets on, is that right?

"A. That is correct."

(*Emphasis added.*)

In June, 1966, at the trial of the instant case, the court independently examined Arnold to ascertain the validity of the above testimony:

"THE COURT: Let me see the complete transcript.

"MR ADAM: I haven't seen that myself.

"THE COURT: I'm reading from a portion of the answer:

" 'We gave him ten dollars in pre-recorded funds; he signed a receipt for same. He got out of the car, walked to the Burgundy Lounge. He walked down the east side of Drexel. I stood in the doorway on the west side of Drexel. He went in the Burgundy Lounge, stayed for approximately ten minutes. He walked back out, walked back to the squad car, joined Officer Williams and I and handed me one tinfoil package and said—'

"Did you give that answer?

"OFFICER ARNOLD: Yes sir, I did.

"THE COURT: Was that true: He went to the Burgundy Lounge and stayed for approximately ten minutes?

"OFFICER ARNOLD: And he went to the lounge, as I testified last week. That is correct, he went to the lounge. I didn't say that he stayed in the lounge. I think I testified before that he was gone, that the defendant was gone for approximately ten minutes, approximately ten or twelve minutes, the whole time.

"THE COURT: No, no. You're referring here in this transcript—As the court reporter took it, he says that you testified, 'He' referring to Cox.

"OFFICER ARNOLD: Yes, sir.

"THE COURT: (Continuing)—'went in the Burgundy Lounge and stayed for approximately ten minutes.'

"OFFICER ARNOLD: I didn't mean that he stayed inside the lounge, but I'm sure that's what the transcript said, as you're reading it. I didn't mean to infer that he stayed in the lounge for ten minutes. He was gone for approximately that length of time.

"As I stated before, there is a little—as you enter the tavern, there is a little foyer or vestibule, you may call it. He stepped right in and stepped right out; and other fellows were standing on the street and Cox returned. If I stated he stayed in the tavern, I'm sure I was wrong."

It is the defendant's contention that the above inconsistent statements of Officer Arnold amount to perjury, and that knowing use of this perjured testimony by the State resulted in his conviction. Testifying in his own behalf, defendant denied knowing Cox, denied transferring any narcotics to Cox or receiving any money from Cox, and that at no time was he (defendant) ever outside the lounge speaking with Cox.

It is reasonable to conclude that Officer Arnold offered two versions of what occurred on November 4, 1965, when he observed the acts of the defendant and the witness Stephen Cox. Arnold testified at the preliminary hearing that Cox went in the tavern, stayed about ten minutes, came out and gave Arnold the narcotics. In his trial testimony, Arnold placed Cox and the defendant together outside the tavern where he (Arnold) viewed the alleged transaction taking place, although Arnold could not see what was transpiring among

■■■■■■■■

the group. This critical contradiction in Arnold's testimony at the hearing and at the trial most certainly affects the weight and credibility to be accorded his testimony. For if it is true that Arnold saw Cox go into the lounge to make the controlled "buy" of narcotics, then Cox's testimony as to the transaction with defendant is uncorroborated, since Arnold could not have seen the dealings outside of the lounge while he was a quarter of a block away.

It is interesting to note also that Arnold did not state in his police report of November 5, 1965, that the man he saw milling around on the street with Cox was the defendant or the same person he later arrested, nor was any mention made in the report about seeing the defendant outside the lounge with Cox. On the other hand, Cox swore he never went into the lounge, and all his dealings with the defendant were outside on the street. If it is true that Cox and defendant were outside of the lounge, as Arnold testified at the trial, could he have seen the alleged sale of narcotics take place from the distance of one quarter block, among a group of men of whom the only one he knew was Cox, since he (Arnold) had never previously seen or known the defendant? Arnold also mentioned he saw a person, whom he says was the defendant, walk into the lounge, then the same person came back outside via the package goods store doors, proceeded into the alley and returned to the group where the transaction was completed.

■■ When we consider the testimony of Cox, a former narcotics addict who was awaiting trial for sale and possession of narcotic drugs and who was arrested for such offense by Officer Arnold in December, 1964, yet who volunteered to make a controlled purchase of narcotics because he thought the authorities would "go easier on me," there is some question that the defendant was convicted of the offense beyond a reasonable doubt. The fact that Cox, by his own testimony, is a narcotics addict

has an important bearing on his credibility, and our courts have held many times that the testimony of a narcotic addict is to be reviewed with great caution. People v. Crump, 5 Ill2d 251, 125 NE2d 615 (1955); People v. Hamby, 6 Ill2d 559, 129 NE2d 746 (1956); People v. Boyd, 17 Ill2d 321, 161 NE2d 311 (1960); People v. Bazemore, 25 Ill2d 74, 182 NE2d 649 (1962). In the instant case the State contends there was corroboration of Cox's testimony, together with the other evidence adduced at the trial. Nevertheless it is our opinion that Arnold's testimony did not corroborate Cox's testimony sufficiently to establish the defendant guilty of the unlawful sale of narcotics beyond a reasonable doubt. (See People v. Watkins, 68 Ill App2d 389, 216 NE2d 494 (1966)).

■ The defendant's contention that Officer Arnold, who testified for the State, committed perjury based upon a difference between his testimony at the trial and his testimony at the preliminary hearing is not, we believe, well founded. No claim of perjury was ever made at the trial, and the issue was raised by the defendant for the first time in a post trial motion to vacate the judgment. Discrepancies or inconsistencies in testimony do not necessarily establish perjury and such a contention falls short of a claim that the State knowingly used perjured testimony. People v. Grayson, 29 Ill2d 229, 193 NE2d 801 (1964); People v. Armstrong, 39 Ill2d 567, 237 NE2d 449 (1968); People v. Tyner, 40 Ill2d 1, 238 NE2d 377 (1968).

In the case at bar, the evidence and the inferences therefrom do not establish the defendant's guilt beyond a reasonable doubt. Consequently, the judgment of the trial court is reversed.

Judgment reversed.

MURPHY and BURMAN, JJ., concur.