THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JESSIE LITTLEJOHN, Defendant-Appellant.

(Nos. 53100, 53101 cons.;

First District—December 17, 1970.

Harvey J. Powers, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and Lawrence J. Bolon, of counsel,) for the People.

Mr. JUSTICE ADESKO delivered the opinion of the court:

Defendant, Jessie Littlejohn, was found guilty at a bench trial of the unlawful sale of a narcotic drug and sentenced to the Illinois State Penitentiary for a term of not less than ten nor more than thirteen years. The defendant was also sentenced concurrently to not less than one nor more than three years for jumping bail. Sentence was imposed after the defendant pleaded guilty to the indictment charging the offense of bail jumping. Defendant made a motion to consolidate the two cases for the purpose of appeal, which was granted. Defendant appeals from the aforementioned convictions on the grounds that (1) he was not proven

guilty beyond a reasonable doubt; (2) he was deprived of the true and legal name of the alleged informant purchaser, which denied him his right to be informed of the "nature and cause of the accusation", and; (3) he was denied the right to a speedy trial.

The evidence indicates that on May 18, 1965, at about 11:00 A.M., John Leak (alias Roy Andrews, an informer), called and spoke on the telephone to Officer Thomas King. After the conversation he went to the narcotics bureau at 11th and State streets where he was stripped and searched. The informant was then given two ten dollar bills which had been dusted with fluorescent powder and the serial numbers recorded. The record discloses that the informer knew that the bills were recorded but did not know that they had been dusted with fluorescent powder.

The informant, along with Officers King, Kelly, and Collins left the police station and drove in an unmarked car to the area of 63rd and Drexel. The officers parked the car in a "T" alley, north of 63rd between Ingleside and Ellis. Although the officers remained in the squad, John Leak got out of the auto and walked to the northwest corner of 63rd and Drexel streets. Prior to reaching the corner, Leak had a few words with his prostitute-girl friend named Margaret, who stood between 15 and 20 feet from the defendant.

Leak testified that he first saw the defendant standing in front of his car at the northwest corner of 63rd and Drexel. Leak had known the defendant for a period of about three months. The defendant asked what he wanted and Leak told him that he wished to purchase two ten dollar packages of heroin. The defendant then told Leak to get into the car. Both entered the car with the defendant getting in on the driver's side while Leak sat opposite the defendant. Leak testified that no one was in the car besides Jessie Littlejohn and himself. The defendant then reached up under the dashboard and took two tinfoil packages which he gave to the informant. Leak tendered to the defendant the two pre-recorded and fluorescent powder dusted ten dollar bills and got out of the car. The defendant then drove off in his auto with another fellow. Leak walked across the street toward the police car, took the license plate number of Littlejohn's car and gave the two packages of heroin to Officers King, Kelly and Collins.

At about 1:30 P.M. or 2:00 P.M. of the same day, Officer Ernest Grissett received a radio communication describing defendant's auto. The officer observed the defendant's auto being parked around 67th and Langley streets. The two occupants were placed under arrest, searched, and transported to the station. At police headquarters the defendant's hands and clothing were placed under a fluorescent light. Traces of fluorescent

powder were found on the defendant's hands and in the right pocket of his trousers. The pre-recorded bills were not found.

The defense attacks the sufficiency of the evidence by challenging the credibility of the informant, John Leak. The defense points to the fact that John Leak was a narcotics addict, that he was addicted to drugs on the day of the alleged sale and also on the day of the trial, that he took narcotics just prior to testifying, that he was unemployed and had an income of $51.00 per week coupled with a habit that cost him about $20.00 a day.

The Illinois Supreme Court and this court have dealt in length with the credibility and the weight to be given the testimony of a narcotics addict. In *People v. Boyd*, 17 Ill.2d 321, 326, 161 N.E.2d 311, the Supreme Court stated:

"We have previously had occasion to consider the weight to be given the testimony of a narcotics addict who is a police informer. In *People v. Hamby*, 6 Ill.2d 559, we held that the fact that a witness is also a narcotics addict has an important bearing upon the credibility of the witness and likewise held that while, technically speaking, a police informer who cooperates with the police to arrange for a sale of narcotics is not an accomplice, the situation of such a witness is sufficiently similar to that of an accomplice to warrant close scrutiny of the witness's testimony. In *People v. Crump*, 5 Ill.2d 251, 125 N.E.2d 615, 621, we quoted with approval the following language from *State v. Fong Loon*, 29 Idaho 248, 158 P. 233: 'Habitual users of opium, or other narcotics, become notorious liars * * *. The capacity of a witness to observe and to receive accurate impressions, to retain them in his memory, and to correctly relate them, also his power to inclination to be truthful are all subjects which go to the credibility of a witness.' "

■■ We agree with the defense that the fact that Leak is a narcotics addict has an important bearing on his credibility and consequently his testimony is to be reviewed with due caution. (*People v. Reddick* (1969), 107 Ill.App.2d 123, 245 N.E.2d 873.) A corollary of this rule is the principle that the uncorroborated testimony of an addict-informer alone is insufficient to prove an accused guilty beyond a reasonable doubt of the unlawful sale of narcotics. *People v. Watkins* (1966), 68 Ill.App.2d 389, 393, 216 N.E.2d 494.

In reviewing the informer's testimony, John Leak testified on direct examination that he did not talk to anybody on the corner of 63rd and Drexel besides Jessie Littlejohn. On cross-examination he stated that he had a conversation with his girl friend Margaret before he went over to Jessie Littlejohn. The informer explained he simply forgot about the

conversation with Margaret on direct examination. We believe this apparent inconsistency to be inconsequential. Furthermore, the conviction in the instant case rests not solely on the testimony of the informer. There was corroboration by the testimony of the police officers as well as the traces of fluorescent powder.

Although the police did not witness the transaction in question, the subsequent arrest of the defendant in his car in the same area with another fellow within two hours of the alleged sale corroborates the informer's testimony. Of paramount importance is the fact that traces of fluorescent powder were found on the defendant's hand and trousers. The powder traces clearly came from the two ten dollar bills. The corroborative element of the traces of flourescent powder is strengthened by the fact that the informer knew the bills were recorded but did not know they had been dusted with flourescent powder. A police officer testified that the bills had been dusted before the informer arrived at police headquarters, then recorded in his presence. These facts show that the defendant had received the marked money, thus corroborating the sale.

The defense places great reliance on *People v. Bazemore* (1962), 25 Ill.2d 74, 182 N.E.2d 649. We quote approvingly from *Bazemore* (p. 77):

> "And while we are loathe to disturb their findings in such matters, we cannot say after a searching analysis of the record that the entirely uncorroborated testimony of Lenier (the informer) is so clear, satisfactory, and convincing as to remove all reasonable doubt of defendant's guilt. This is not a case where the informer's accusation receives corroboration from close police surveillance of the transaction, from an immediate arrest, or from the finding of marked money on the accused, but one which developed in such a way that the informer was at liberty to name almost any person he wished to select as the guilty one."

The facts of *Bazemore* make it easily distinguishable from the instant case. In *Bazemore* the conviction rested solely on the uncorroborated testimony of an addict-informer. No drugs, marked money, or traces of any kind were found on the defendant. Furthermore, the informer's testimony was suspect since he claimed there were witnesses to the sale for the first time during the trial, rather than cooperating with the police before trial.

*People v. Reddick* (1969), 107 Ill.App.2d 123, 245 N.E.2d 873, is also distinguishable since in that case this court found the contradictory testimony of a police officer who was one-quarter of a block away at the time of a purported controlled sale of a narcotic drug to a "police informer" did not corroborate the informer's testimony sufficiently to establish the accused guilty beyond a reasonable doubt.

■■ In the instant case we find the testimony of the informer cor-

roborated by the testimony of the police and the traces of fluorescent powder. Consequently, we believe the evidence was sufficient to establish the accused guilty of the sale of narcotics beyond a reasonable doubt.

■■ Defendant also contends that using the alias of the police informant, that is, "Roy Andrews" in the indictment as the purchaser of narcotics from the defendant denied the defendant his constitutional rights. The record reveals that the name of "Roy Andrews" was an alias used by the informant purchaser whose real name is John Leak. *People v. Hill*, 83 Ill. App.2d 455 (abst.) *cert.* den. 393 U.S. 988, raised the same claim where the indictment named "John Michaels" as the person to whom the defendant sold the narcotic drug when the real name of the informant was "Roger Scannel." In *Hill*, the court refused to reverse the conviction since there (as in the instant case) were no claims or even indications that the defendant was surprised or misled. In the instant case the record demonstrates the State, on direct examination, established the informant's real name was John Leak. The record also demonstrates that defense counsel could and did prepare a proper defense despite the indictment setting forth the alias. We find that the use of the informant's name was not a deliberate misnomer intended to mislead the defendant. Rather, the use of the alias was designed to promote the public interest by providing a flow of information. *Roviaro v. United States* (1957), 353 U.S. 53. We feel a balancing concept favors non-disclosure of the informer's true identity since the informer's name and address were known to the defendant or, at the least, were ascertainable by the defendant by virtue of the list of witnesses available to him. For these reasons we reject defendant's contention.

Defendant's third contention is that he was denied his right to a speedy trial by being tried in violation of the 120 day rule set forth in Illinois Revised Statutes, Chapter 38, Section 103—5 (1965). At the time of defendant's arrest on June 5, 1965, for the crime of unlawful sale of a narcotic drug, defendant was on parole for an offense he had committed in Indiana. He was released on bond in Illinois on June 7, 1965. Defendant claims that prior to August 29, 1965, he was arrested by Illinois authorities and turned over to Indiana. However, he subsequently testified at the hearing on the motion for discharge that he was arrested by Indiana authorities for violation of his Indiana parole. The defendant then made a demand via a letter to Judge Wendt on August 29, 1965, requesting that he be brought to Illinois to stand trial. While incarcerated in Indiana, the defendant was indicted in Illinois for the instant charge on November 24, 1965. When the defendant was released from his Indiana incarceration approximately one year later on September 15, 1966, he was immediately taken into custody by Illinois authorities as extradiction was waived. On

September 19, 1966, the defendant was arraigned and entered a plea of not guilty. On October 11, 1966, the State's motion to strike this cause with leave to reinstate was granted and on December 1, 1966, this cause was reinstated. Defendant's essential claim is that the period of time spent incarcerated in Indiana should have allowed him to be discharged since this time period was in excess of 120 days and denied him his right to a speedy trial.

■■ Defendant relies primarily on *Smith v. Hooey*, 393 U.S. 383, in which case a defendant was indicted in Texas while serving a sentence in the Federal penitentiary. Defendant made many written demands to be brought to trial in the Texas courts, but to no avail. After he was released by the Federal authorities he was brought to trial in Texas, about six years after his initial demand. The United States Supreme Court held that Texas had a constitutional duty to make a diligent, good faith effort to bring him to trial before the Texas courts. Texas conceded that if it would have made an effort to secure a Federal prisoner's appearance, the defendant would in fact "be produced for trial in the State court." In the instant case, the Indiana authorities pursuant to their extradition law in effect in 1965-1966, would not have released the defendant to Illinois until the Indiana sentence was completed. Burns' Ind. Stat. Ann. 1956, Sections 9-418 to 9-448. See The Handbook on Interstate Crime Control, Ch. VI, "Extradition," pub. by Council of State Governments (1966), Re: Statutory References on Uniform Extradition Legislation and footnotes, p. 139. Indiana adopted the "agreement between governors for the surrender of persons extradited, to state from which extradited," Section 9—423a of the Criminal Code, in 1969, approximately three years subsequent to defendant Littlejohn's release from incarceration in that State. Thus, even if Illinois had initiated proceedings to extradite the defendant to this State the Indiana authorities would not have released his until the Indiana sentence was completed, which is exactly what happened in the instant case. We cannot say that Illinois failed to comply with the good faith standard set by *Smith v. Hooey, supra*, considering the law of the State of Indiana at the time in question.

■■ It is also to be noted that the defense claims the denial of the right to a speedy trial but asserts no actual prejudice as a result of the delay. In *People v. Tetter*, 42 Ill.2d 569, 250 N.E.2d 433 (1969), the Illinois Supreme Court lists the four relevant factors for consideration of a claim of denial of the constitutional right to a speedy trial. They are (1) the length of the delay, (2) the reason for the delay, (3) prejudice to the defendant, and (4) waiver of the right. Time alone will not establish a violation of the right to a speedy trial. We find that when viewed in the totality of these factors the defendant has not been denied his right

to a speedy trial. We also point out that the time period from September 19, 1966, the date of the defendant's arraignment in Illinois, to April 20, 1967, the date on which the motion to dismiss was made, a delay of obviously more than 120 days, was caused by defendant's failure to show up in court on more than one occasion, which subsequently resulted in his being charged with bail jumping. For the foregoing reasons, we reject all of defendant's contentions and affirm the judgment of the Circuit Court of Cook County.

Judgment affirmed.

BURMAN, P. J., and MURPHY, J., concur.