The People of the State of Illinois, Plaintiff-Appellee, *v.* Raymond D. Burlinski, Defendant-Appellant.

(No. 57090;

First District—November 27, 1972.

Philip J. McGuire and Manuel Reyes, both of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and A. Rosendahl, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE EGAN delivered the opinion of the court:

The defendant, Raymond Burlinski, was indicted for sale of narcotics to Walter Lenan and the aggravated battery of police officer Richard McKelvey. At the close of the State's case the defendant moved for acquittal of the sale and the lesser included offense of possession of narcotics. The court allowed the motion as to the sale but denied it as to the possession charge.

After the defendant testified, the case was continued to give him an opportunity to produce the transcript of the preliminary hearing. The testimony at the preliminary hearing of officer Dura, who had testified in the State's case in chief, was read into the record. The court granted the State's motion to strike the charge of possession after he indicated he would find the defendant not guilty.

After both sides rested the court made the finding of guilty of aggravated battery. The defendant was placed on probation for three years with the condition that he serve one year in the House of Correction.

The defendant contends that the State failed to prove him guilty beyond a reasonable doubt.

Richard McKelvey testified that he was a Chicago police officer assigned to the Narcotics Unit for ten years. On December 20, 1969, he and

officer Donald Dura searched the informant, Walter Lenan, who had no money or narcotics on his person. He recorded serial numbers of currency amounting to thirty dollars which he gave to Lenan. He drove Lenan, Dura and officer Bernard Brown to 3737 West Division Street. Brown walked down an elongated gangway adjacent to 3737 and left McKelvey's view. McKelvey, Dura and Lenan entered the gangway. He entered the vestibule with Lenan after telling Dura to walk farther down the gangway and position himself in the rear. Dura did so. McKelvey remained on the first floor landing. He lost sight of Lenan as he made a right turn to go up to the second floor landing. He heard a knock on the door a few seconds after he lost sight of Lenan. He then heard a conversation between Lenan and another person discussing the terms of a sale of a thirty-dollar bag of heroin. He saw Lenan come down the stairs a couple of seconds after the end of the conversation. Lenan gave him a plastic package and he signaled to Dura, who was positioned at the end of the gangway, that the sale had taken place. He then called to Brown, who was coming from the third floor landing and they met outside the defendant's doorway. He conducted a field test on the package and discovered it was heroin. He knocked on the door and heard the same voice which had had a conversation with Lenan ask, "Who is it?" He replied, "Police. Open up the door." He continued knocking and after a couple of minutes heard Dura yell out, "Stop, police." He ran from the second floor to the exit and then to the backyard. He saw Dura struggling with the defendant, whom he had seen many times before and who knew he was a policeman. He joined in the struggle. While Dura was trying to get something out of the defendant's mouth, the defendant was biting, kicking and swinging his arms about. Both he and Dura received blows. After the defendant was subdued, he was searched and a previously recorded five dollar bill was taken from his pocket. He and Dura both went to the hospital. He was treated for a bite on his hand which swelled up to about five times its normal size. The defendant denied knowing anything about the heroin.

On cross-examination, McKelvey testified that the defendant was already struggling with Dura when he arrived in the back. Dura did not come into the building with him after he had signaled to McKelvey. The defendant also received medical treatment.

Officer Bernard Brown testified that he has been assigned to the Narcotics Unit for twenty-one years. He went to the third floor landing. He did not see Dura from the time he left the squad car until Dura and McKelvey were bringing the defendant into the building. He was able to observe the defendant's apartment door. He saw Lenan knock on the door and heard the defendant, whom he recognized, answer. In sub-

stance it was the same conversation that McKelvey testified to. He saw Lenan hand the defendant some money. The defendant closed the door, returned a couple of minutes later and gave a package to Lenan, who walked down the stairs and was met by McKelvey. Brown and McKelvey conducted a field test and knocked on the door. After hearing Dura shout, McKelvey ran out and Brown remained covering the door. He next saw the defendant when Dura and McKelvey were bringing him up the stairs. Another person, an addict, came to the door when they took the defendant to the station. Lenan's brother was in the area.

Donald Dura testified that he has been assigned to the Narcotics Unit for twelve years. He went into the gangway while McKelvey and Lenan went into the hallway. About ten or fifteen minutes later the defendant, whom he had seen before, came out of the building. He told him to stop. The defendant put something in his mouth while running. He tried to subdue the defendant and McKelvey came out of the door and helped him. The defendant was chewing, punching and kicking. Dura was struck. He did not see McKelvey between the time he saw him go into the building with Lenan and the time of the struggle with the defendant. He could not see or hear what was going on inside. When he was struggling with the defendant he injured his hand. He and McKelvey were trying to take something out of the defendant's mouth that he was chewing on.

During the cross-examination of McKelvey the Assistant Public Defender, apparently reading from the Grand Jury transcript, asked McKelvey if he testified before the Grand Jury that after the sale he told Dura to go around to the back entrance. His answer was that he was not saying that he did or did not so testify. No further proof of his Grand Jury testimony was offered nor was any motion to strike the question and answer made later.

The defendant testified that he was in his apartment with his nine-year-old son and Donald Zorc. Lenan came to his apartment, spoke to him for ten minutes and left. He had no conversation with Lenan in the hall. Lenan returned about twenty minutes later with the police, who broke down the door. He had gone out the back door when he was jumped by Dura who "worked him over." He did not bite or kick the officer. He received an injury to his lip that required a few stitches at the Bridewell Hospital. The police questioned Zorc after bringing him back into the apartment. He knew that Dura was a police officer. He was present at the preliminary hearing and heard Dura testify that he was on the third floor and saw the sale.

The court, on motion of the defendant, continued the case to enable the defendant to acquire the transcript of the preliminary hearing. On

the next date the Assistant Public Defender read into the record portions of Dura's testimony at the preliminary hearing. At that hearing Dura said he was with McKelvey and was able to see the defendant take the money, close the door, come back, hand Lenan something and close the door again.

After the court heard this evidence the following colloquy occurred:

> "THE COURT: I don't think we have to go any further. My note said he was never inside, in the gangway and went back into the house.
>
> So does the State want to do anything or I will make a finding.
> STATE'S ATTORNEY: Judge, upon getting this, the State will S.O.L. the charge.
> THE COURT: All right. S.O.L. Sale.
> STATE'S ATTORNEY: Possession. You already threw out the sale."

Donald Zorc testified for the defense that when he arrived at the defendant's home Lenan and the defendant were there. When somebody began knocking on the door he went down the back staircase to the front of the building and was stopped by Dura who was on the landing on the first floor. Dura took him right into the hallway and stayed with him for awhile. The defendant came out, started running toward the street and Dura proceeded after him. Dura, Brown and McKelvey dragged him inside and "worked him over." The defendant, who was covering his face with his arms, did not bite or kick McKelvey. He saw McKelvey and the other punching the defendant.

McKelvey was called in rebuttal and testified that he saw Zorc that day when officer Dura brought him over to the side entrance after the sale was consummated. Dura told Zorc to get inside the areaway. Brown and he were on the second floor. Zorc could not see the beginning of the fight with Dura.

The defendant was convicted of violating Chapter 38, Section 12—4 (b-6), Illinois Revised Statutes, which provides:

> "(b) A person who, in committing a battery * * *
>
> * * *
>
> (6) Knows the individual harmed to be a peace officer, * * * while such officer is engaged in the execution of any of his official duties including arrest or attempted arrest; * * *
>
> * * *
>
> (9) * * * commits aggravated battery * * *."

Section 12—3 provides:

> "(a) A person commits battery if he intentionally or knowingly without legal justification and by any means, (1) causes bodily

harm to an individual or (2) makes physical contact to an insulting or provoking nature with an individual."

The defendant concedes that he knew McKelvey was a police officer and that he was engaged in the execution of his official duties. The defendant argues, however, that the inconsistencies, contradictions and impeachment of the State's witnesses when considered with all evidence in the case raise a reasonable doubt that he committed the battery as defined in Section 12—3.

The witnesses upon whom the State must rely are McKelvey and Dura. Dura never explained the contradictions between his testimony at the preliminary hearing and the trial, if indeed, he could. It is conclusive that he testified falsely under oath at either the hearing or the trial.

At the trial he testified that he did not see McKelvey between the time he saw him go into the building with Lenan and the time of the struggle with the defendant.

McKelvey, however, contradicted Dura in this regard when he said he signaled to Dura that the sale had been made. Further, on rebuttal, McKelvey testified that Dura brought Zorc over to the side entrance after the sale was completed and told Zorc to get inside the areaway with Brown and McKelvey.

Brown's testimony in chief contradicted McKelvey's rebuttal testimony when he testified that he never saw Dura from the time he left the squad car until Dura and McKelvey were bringing the defendant into the building.

Although the better practice would require the introduction of the Grand Jury transcript impeaching McKelvey, we cannot ignore the fact that the principal witness could not say that he had not testified under oath to a material fact contrary to his trial testimony.

Significantly, Zorc was never mentioned in the State's case in chief by any of the three officers. Nor did any of the officers provide any explanation of how the defendant ended up with several stitches in his lip.

The record reflects that the finding of guilty was based on the evidence of McKelvey that his hand was bitten.

The colloquy between the court and counsel discloses that the court dismissed the sale charge for the failure to produce Lenan, relying on *Roviaro v. U.S.*, 353 U.S. 53, 77 S.Ct. 623. The position he later took on the possession charge, correctly so, perforce was based on his conclusion that he could not rely on the testimony of the officers. Indeed, the State conceded the unreliability of the testimony by its motion to strike the charge. We see no reason to treat that testimony differently when applied to the battery charge, particularly considering the State's own evi-

dence that the officers were forcibly trying to remove something from the defendant's mouth.

What was said in another case reversed because of contradiction in the testimony of a police officer is appropriate: ·

> "[W]e are not unmindful of the usual rule that the credibility of the witnesses is a matter for the trial judge to determine. However, where substantial constitutional rights are involved, the record should be clear that these rights were not abridged. The record in this case makes no such showing." *People v. Catavdella* (1964), 31 Ill.2d 382, 388, 202 N.E.2d 1. See also *People v. Reddick* (1969), 107 Ill.App.2d 123, 245 N.E.2d 873.

The evidence does not establish the guilt of the defendant beyond a reasonable doubt. Consequently, the judgment of the trial court is reversed.

Judgment reversed.

GOLDBERG, P. J., and BURKE, J., concur.