[Crim. No. 14358. First Dist., Div. One. Oct. 21, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
HARRIET A. LARKIN, Defendant and Appellant.

**COUNSEL**

LeRue James Grim for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, and W. Eric Collins, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**ELKINGTON, J.**—Following her unsuccessful motion to suppress certain physical evidence (Pen. Code, § 1538.5) essential to her prosecution, defendant Larkin pleaded guilty to possession of heroin (a violation of Health & Saf. Code, § 11350). Her appeal from the ensuing judgment concerns only the validity of the superior court's order denying the motion to suppress.

We state the undisputed relevant facts.

A police officer patrolling his beat in "a very high crime area, especially dealing with narcotics," observed several known "heroin users" standing around defendant Larkin in front of a pool hall. In the area during the past three years "a trend [had] gone to girls doing the dealing" in narcotics. The experienced officer "thought suspicious activities were taking place" and he "decided to drive around the block once more." Upon his return defendant saw the police vehicle, and as he got out she "looked very startled and walked into the pool hall along with one other person, . . ." The officer "was primarily concerned with identifying or talking to the defendant," so he "followed her in and found her sitting on a bench in the pool hall at which time [he] asked her her name." The officer testified to the succeeding events as follows: "[District attorney]: Q. What occurred next? A. Well, I couldn't understand her reply, very inaudibly, and I asked her again. This time she tried to say her name, I believe, or she just opened her mouth and I noticed some colored objects. To me, with my experience, I knew what they were, rolled toy balloons. Q. Officer, during your training as a narcotics officer, had you ever seen colored objects in a person's mouth such as this person? A. Many times. Q. With what did you associate that observation? A. Heroin wrapped and rolled in toy balloons, toy rubber balloons. Q. Had you ever seen heroin transported in that manner, inside a person's mouth? A. Very many times. Q. Is that a common manner of transport, of transporting heroin? A. Yes, most common. Q. After you made this observation, what did you do? A. I reached underneath her chin, asked her to spit it out. At this time, I put my hand around the neck in case she tried to swallow it, at which time I asked her to spit it out. And she was—she didn't try to fight, she just spit them all out. Q. What did the objects that were in the suspect's mouth turn out to be? A. Eight hand-rolled toy balloons all containing a powdery substance."

The powdery substance was heroin.

Defendant relies heavily upon certain language selected from *Irwin* v. *Superior Court,* 1 Cal.3d 423, 427 [82 Cal.Rptr. 484, 462 P.2d 12], as follows: "Where the events are as consistent with innocent activity as with criminal activity, a. detention based on those events is unlawful." We believe the words are taken out of their proper and intended context. Obviously the *Irwin* court did not require that the events justifying a detention must preponderantly establish criminal activity, for if that were so then there would also be probable cause for an arrest and search of the person. The rule is elsewhere stated by *Irwin* (p. 427) in this manner: " '[t]here must be a "rational" suspicion by the peace officer that some activity out of the ordinary is or has taken place . . . . some indication to connect the person under suspicion with the unusual activity . . . . [and] some suggestion that the activity is related to crime." ' More recently the same court in *People* v. *Flores,* 12 Cal.3d 85, 91 [115 Cal.Rptr. 225, 524 P.2d 353], choosing not to mention *Irwin* as authority on the subject, stated: "The *good faith suspicion* which warrants an officer's detention of a person for investigative reasons is necessarily of a lesser standard than that required to effect an arrest." (Italics added.)

■ Here the superior court reasonably could, and did, conclude that the officer entertained the "good faith *suspicion*" of *Flores* that criminal activity was taking place. He was accordingly permitted to detain defendant for his intended questioning. And upon observing, in plain sight, the heroin-filled rubber balloons in her mouth he was legally authorized to seize that contraband. (See *People* v. *Superior Court (Peck)* 10 Cal.3d 645, 648 [111 Cal.Rptr. 565, 517 P.2d 829]; *Harris* v. *United States,* 390 U.S. 234, 236 [19 L.Ed.2d 1067, 1069, 88 S.Ct. 992].)

Indeed, in the context of the present case, it is doubtful that the officer's conduct amounted to a *detention* at all.[1] His purpose was to "identify" or "talk to" defendant, something that any person would lawfully be permitted to do, or try to do. The evidence supports no reasonable inference of any intended, or actual, restraint upon defendant's movement, or liberty, up to the point when the heroin containers were observed in her mouth.

---

[1]"Detention . . . 1: the act or fact of detaining; a: a holding in custody (— of a tardy pupil after school hours) b: a holding back (the — of a motorist by a traffic officer) 2: the state of being detained (— in jail): enforced delay (accidental — on a journey); *esp:* a period of 'temporary custody prior to disposition by a court (the — of juvenile delinquents) . . . . " (Webster's New Internat. Dict. (3d ed. 1965).)

"Detain . . . 1: to hold or keep in or as if in custody (—ed by the police for questioning) 2 *obs:* to keep back (as something that is due): withhold 3: to restrain esp. from proceeding: hold back: stop, delay (—ed by an accident) . . . . " (Webster's New Internat. Dict. (3d ed. 1965).)

For these several reasons no error, or abuse of discretion, is seen in the superior court's ruling denying defendant's motion to suppress the heroin seized by the officer.

The judgment is affirmed.

Molinari, P. J., and Lazarus, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.