[Crim. No. 16014. First Dist., Div. One. Aug. 2, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
DANNY DALE KING, Defendant and Appellant.

**COUNSEL**

Paul A. Roller, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, and Robert R. Granucci, Deputy Attorney General, for Plaintiff and Respondent.

---

**OPINION**

**ELKINGTON, J.—**

The sole issue of defendant King's appeal from an order of commitment entered on his plea of guilty to possession of heroin (Health & Saf. Code, § 11350) is whether the superior court erred in denying his Penal Code section 995 motion to set aside the charging information. The validity of the information depended upon the absence of a Fourth Amendment violation in the police seizure of certain heroin as will hereafter be discussed.

The appeal appears to be permitted by Penal Code section 1538.5, subdivision (m); the People make no contrary contention.

One afternoon a police officer, traveling in a police vehicle, saw King standing on the sidewalk with seven or eight other individuals, and looking in the direction of the police car. The officer proceeded in the direction of the group and as he did, King "began walking away, away from [the] approaching vehicle." The officer "exited the vehicle and [again] observed Mr. King walking away." The officer "called out to him," saying "Danny, stop, I want to talk to you," but King "continued to walk away speeding up his walk as he did so." King was then seen to place his hand in his pocket and upon pulling it out, make a throwing motion. Twenty-three toy balloons of different colors containing heroin were thus thrown to the ground. The officer, a trained narcotics specialist, knew such toy balloons to be a common method of packaging heroin, so he grabbed King "to keep him from discarding any further objects." Following King's arrest more heroin was found upon his person.

The officer additionally gave the following testimony: "Q. And you were within six feet of him when he pulled his hand out of his pocket, right? A. Approximately six feet, yes. Q. You were going to detain him at that time, is that right? A. We were going to stop him and talk to him,

yes. Q. But he wasn't free to go? A. We hadn't actually detained him at the time so he was free to go if he wanted to."

We briefly state the function of this court on King's appeal. Where the superior court's conclusions on a Fourth Amendment issue turn upon issues of fact and credibility of witnesses we may not reweigh the evidence, or *draw inferences other than those reasonably drawn by the trial court.* And where, as here, the trial court has found probable cause, we may set aside such a finding only if there is no substantial evidence tending to support it. (*People* v. *West,* 3 Cal.3d 595, 602 [91 Cal.Rptr. 385, 477 P.2d 409]; *People* v. *Wilkins,* 27 Cal.App.3d 763, 770 [104 Cal.Rptr. 89]; *People* v. *Orr,* 26 Cal.App.3d 849, 856-857 [103 Cal.Rptr. 266]; *People* v. *Harrison,* 1 Cal.App.3d 115, 120 [81 Cal.Rptr. 396]; *People* v. *Ortiz,* 210 Cal.App.2d 489, 497 [26 Cal.Rptr. 677].)

King argues only that the evidence sought to be suppressed by him was the product of unlawful police *detention.* He appears to concede that, assuming the legitimacy of the claimed detention, the arrest and subsequent search of King and the use in evidence of the discarded toy balloons' contents were constitutionally proper.

There can be no doubt that a police officer in the performance of his duties shares the right of all persons to address another on the public streets, or at least that there is no constitutional proscription of his so doing. "There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets." (*Terry* v. *Ohio,* 392 U.S. 1, 34 [20 L.Ed.2d 889, 913, 88 S.Ct. 1868]; conc. opn. of Mr. Justice White.) And so long as his conduct does not constitute a "detention," a police officer may talk to anyone in a public place, "something that any person would lawfully be permitted to do, or try to do." (*People* v. *Larkin,* 52 Cal.App.3d 346, 349 [125 Cal.Rptr. 137].) Unless there is some sort of a temporary restraint or holding in custody, there is no detention. (See *People* v. *Larkin, supra,* p. 349; Webster's New Internat. Dict. (3d ed. 1971) "detain," "detention," p. 616.)

The conduct of the police officer of the instant case—calling out to someone known to him who was walking away at an accelerating pace, "Danny, stop, I want to talk to you"—was, in our opinion, ambiguous. From the apparent command, "stop," an inference of an intended and actual detention might reasonably have been drawn by the trial court. But just as reasonable, in our opinion, would be an inference of no intention to detain, but rather of an appropriate means under the

circumstances of advising King of the officer's desire to talk to him. It was the latter inference that was presumably drawn by the trial court.

As pointed out, where two or more inferences can reasonably be drawn from the facts, we may not substitute our deductions for those of the trial court. This latter rule is "expressly made applicable to decisions of a trial court resolving Fourth Amendment issues." (See *People* v. *Escarcega*, 43 Cal.App.3d 391, 394 [117 Cal.Rptr. 595].)

We are not persuaded that King's *reaction* to the policeman's call tends to establish an unlawful detention. We are concerned only with the reasonableness of the officer's conduct, not with the subsequent response of King motivated by a consciousness of guilt.

We accordingly conclude, as did the superior court, that the police conduct under consideration was without Fourth Amendment flaw.

The order of commitment (termed "final judgment and sentence" in the notice of appeal) is affirmed.

Racanelli, P. J., and Sims, J., concurred.