[Crim. No. 31138. Second Dist., Div. One. Sept. 12, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
CLARENCE JONES, Defendant and Appellant.

**COUNSEL**

Donald M. Re and Robert Shapiro for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Edward T. Fogel, Jr., and Joyce I. Kennard, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**LILLIE, Acting P. J.**—A jury found defendant guilty of possession of heroin and misdemeanor battery. He appeals from the judgment.

The following, adduced on the Penal Code section 1538.5 hearing, demonstrates that appellant's contention that the evidence seized was the product of an illegal detention, is without merit.

Between July 19 and December 9 Narcotic Officer Burwell received information from six reliable informants that defendant and Linda Jones were selling quarter balloons or spoons of heroin daily in the Pasadena-Altadena area; at noon on December 9 he received information from an anonymous caller that defendant was cutting an ounce of heroin and later that afternoon would deliver some to Janet Earl at the Community Arms housing project.

Officers Burwell and Moe in plain clothes driving an unmarked police car, commenced surveillance of defendant's residence. At 7:30 p.m. defendant accompanied by a man (Simon) and woman (Linda Jones) entered a vehicle parked in the driveway. Officer Burwell followed the car driven by defendant to the carport of the Community Arms where defendant parked; Linda exited and ran into the apartment building. Officer Burwell then exited his car and walked toward defendant's car to

talk to him about the information he had received, but as he approached the driver's window, defendant turned, faced him and locked the door; "at the same time"—"almost simultaneously"—he called out "Police officer, Jones," and defendant reached into his pocket, withdrew a vial, and began removing balloons and placing them in his mouth; balloons are the most common method of packaging heroin for street sales in the area, and he formed the opinion defendant was trying to destroy the heroin by swallowing it which is a common technique used to dispose of contraband; he ordered defendant to open the door but he did not comply instead, passed some of the balloons to Simon in the back seat, then put his hands under the dashboard on the passenger side. At that point Officer Burwell broke the window on the driver's side with his flashlight, unlocked the door and pulled defendant from the car; defendant put up a struggle and moments later two uniformed officers arrived and subdued him. After defendant was lifted from the ground, two balloons of heroin were found where defendant had been lying.[1]

Defendant testified that he recognized Officer Burwell from previous encounters and asked what he wanted but could not hear the reply because the radio was playing; as he leaned over to turn down the radio the officer broke the window and dragged him out of the car; he denied having any balloons or knowing anything about the two found on the ground.

■ In reviewing a disputed Fourth Amendment claim made in a suppression hearing, the trial court is vested with the power to judge the credibility of witnesses, resolve factual conflicts, weigh the evidence and draw factual inferences. (*People* v. *Superior Court (Keithley)* 13 Cal.3d 406, 410 [118 Cal.Rptr. 617, 530 P.2d 585]; *People* v. *Gardner,* 90 Cal.App.3d 42, 49 [153 Cal.Rptr. 160].) This court may not reweigh the evidence or draw inferences other than those reasonably drawn by the trial court. (*People* v. *King,* 72 Cal.App.3d 346, 349 [139 Cal.Rptr. 926].) All presumptions favor the exercise of the trial court's power, and its findings whether express or implied, must be upheld if they are supported by substantial evidence. (*People* v. *Superior Court (Keithley), supra,* 13 Cal.3d 406, 410.)

[1]The trial testimony was substantially the same, except for evidence that during the struggle with defendant, Officer Coambs received blows to his upper chest and throat, and at the police station Officer Burwell asked defendant if he wanted his stomach pumped explaining that if he swallowed a large number of balloons of heroin he could die, and defendant replied "let me die." Defendant testified he, Linda Jones and Craig Simon drove to Community Arms (Corina Downs) to pick up Linda's sister, and denied having a vial of balloons of heroin or hitting any officer.

 Appellant contends the "contact" between him and Officer Burwell[2] constituted a detention which was unlawful because it was based solely upon an anonymous tip. He relies on a quote from *In re Tony C.,* 21 Cal.3d 888 [148 Cal.Rptr. 366, 582 P.2d 957]: "A more fruitful approach focuses on the purpose of the intrusion itself. If the individual is stopped or detained because the officer suspects he may be personally involved in some criminal activity, his Fourth Amendment rights are implicated and he is entitled to the safeguards of the rules set forth above." (P. 895.) We point out that the foregoing rule is predicated on the assumption that an individual "is stopped or detained." The issue before us is not whether Officer Burwell suspected defendant "may be personally involved in some criminal activity" but whether, in the first instance, his approach to the vehicle without more constituted a stop or detention as earlier defined in *Tony C.* at page 895.

Officer Burwell approached the driver's side of defendant's vehicle "to contact him and interview him about that information." But as he walked up to the driver's side, defendant turned, faced him "then locked the driver's side door" and, "almost simultaneously," Officer Burwell called out "Police officer, Jones" and defendant began to stuff balloons of heroin into his mouth.

Defendant was seated in the parked vehicle awaiting the return of Linda Jones. At the sight of Officer Burwell, before the officer said or did anything, defendant cut off contact by locking the door. Before defendant locked the door Officer Burwell had done nothing but indicate by his approach a desire to speak to him; he did not speak to defendant, did not stop defendant or his car because neither was in motion, did not restrain or impede defendant in any movement away from him or otherwise and in no manner restrained his liberty. Whatever slight limitation on defendant's freedom of action occurred, defendant himself imposed it when he saw the officer and elected to lock himself in the vehicle.

 A police officer in the performance of his duties has the right to address another person out of doors as long as there is no temporary restraint or holding in custody. (*People* v. *King,* 72 Cal.App.3d 346, 349 [139 Cal.Rptr. 926].) Each case must be decided on its own facts but "a detention occurs if the suspect is not free to leave at will—if he is kept in

---

[2]The "contact" referred to must relate to Officer Burwell's approach to the driver's side of the vehicle, because his subsequent act of breaking the window and entering the car surely was a detention, and one which was justified by information in the officer's possession and his personal observation of defendant's criminal activity in the vehicle.

the officer's presence by physical restraint, threat of force, or assertion of authority." (*In re Tony C.,* 21 Cal.3d 888, 895 [148 Cal.Rptr. 366, 582 P.2d 957].) ▮ Officer Burwell did not detain and question defendant (*People* v. *Moore,* 69 Cal.2d 674, 683 [72 Cal.Rptr. 800, 446 P.2d 800]), or restrain his freedom to walk or drive away (*Terry* v. *Ohio* (1968) 392 U.S. 1, 16 [20 L.Ed.2d 889, 902-903, 88 S.Ct. 1868]; *People* v. *Bower,* 24 Cal.3d 638, 643 [156 Cal.Rptr. 856, 957 P.2d 115]; *In re Tony C., supra,* 21 Cal.3d 888, 897.)

Defendant recognized Officer Burwell from previous encounters, but the officer was not in uniform, displayed no weapon, was not in a marked police car, made no threatening move or even spoke to defendant prior to defendant's act of locking the door. Had defendant remained seated in his locked car and done nothing, subsequent police action to talk to him or gain entrance to the vehicle would have presented a far different issue. An outright refusal to cooperate with police cannot create adequate grounds for an intrusion which would be otherwise unjustifiable. (*People* v. *Bower,* 24 Cal.3d 638, 649 and fn. 9 [156 Cal.Rptr. 856, 597 P.2d 115].) We conclude that the officer's mere presence at the side of the vehicle which caused defendant to lock himself inside, in the context of the facts here, was no more than a "contact" and not a sufficient intrusion into defendant's life to put into effect the rule of detention set up in *People* v. *Bower, supra,* 24 Cal.3d 638, and *In re Tony C., supra,* 21 Cal.3d 888. Thus neither *Bower* nor *In re Tony C.* alters our conclusion for in both cases there was clearly a detention—in *Bower* defendant, proceeding at a "very quick walk, almost a run" was ordered by police to and did stop and turn around (p. 643); in *Tony C.* police stopped two boys walking along the sidewalk (p. 896). The real question in both cases was whether the detention was justified.

Only when Officer Burwell saw defendant put the balloons in his mouth did he order him to open the door, a request he ignored and instead handed some of the balloons to Simon then put his hands under the dashboard, at which point the officer broke the window. He placed no restraint on defendant's movement or liberty until he observed defendant engage in criminal activity. The two balloons in plain sight seized as a result of that detention were admissible. (*People* v. *Superior Court (Peck)* 10 Cal.3d 645, 648 [111 Cal.Rptr. 565, 517 P.2d 829]; *People* v. *Gardner,* 90 Cal.App.3d 42, 50 [153 Cal.Rptr. 160].)

▮ Nor is there merit to the contention that appellant was not competently represented by counsel because he did not object to Officer

Burwell's testimony concerning "incriminating statements" made by him after arrest and at a time when he was not advised of his *Miranda* rights. Appellant has not shown that his counsel "failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates." (*People* v. *Pope,* 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859].) In fact the following demonstrates that such an objection would not have been well taken. ▆ Trial counsel is not required to make futile objections, advance meritless arguments or undertake useless procedural challenges merely to create a record impregnable to assault for claimed inadequacy of counsel. (*People* v. *Constancio,* 42 Cal.App.3d 533, 546 [116 Cal.Rptr. 910].)

Officer Burwell testified at trial that after defendant's arrest and at the station, "I told Mr. Jones that in my opinion he swallowed balloons that contained heroin and I was not sure how many he had ingested [*sic*] and that I was concerned for his health and that there was a possibility that the balloons might burst inside of his stomach and that if they—If there was an excessive amount that it could probably kill him and that I was going to give him the opportunity to have his stomach pumped so that the balloons could be retrieved and because he could conceivably die. His reply was, 'let me die.' " This had been recorded with a cassette tape.

Defendant was in custody, but his reply "let me die" was not the product of a process of interrogations that lends itself to eliciting incriminating statements. (*Miranda* v. *Arizona* (1966) 384 U.S. 436, 444 [16 L.Ed.2d 694, 706-707, 86 S.Ct. 1602, 10 A.L.R.3d 974].) ▆ "In determining whether questioning constitutes a process of interrogations, we must 'analyze the total situation which envelops the questioning by considering such factors as the length of the interrogation, the place and time of the interrogation, the nature of the questions, the conduct of the police and all other relevant circumstances.' [Citation.]" (*People* v. *Terry,* 2 Cal.3d 362, 383 [85 Cal.Rptr. 409, 466 P.2d 961]; *People* v. *Myles,* 50 Cal.App.3d 423, 431 [123 Cal.Rptr. 348]; *People* v. *Tarter,* 27 Cal.App.3d 935, 943 [104 Cal.Rptr. 271].) ▆ Officer Burwell asked defendant a single question—if he wanted his stomach pumped—as soon as they arrived at the police station where the officer could make arrangements to have it done. "The question was not 'inquisitorial,' 'intimidating,' or accusatory.' (*People* v. *Treloar,* 64 Cal.2d 141, 147 [49 Cal.Rptr. 100, 410 P.2d 620].)" (*People* v. *Terry, supra,* 2 Cal.3d 362, 383.) It is apparent that the only answer the officer expected or was interested in was "Yes" or "No"; but defendant elected to volunteer, "let me die." In light of Officer Burwell's personal observations of defendant's conduct in swallowing the

balloons of heroin, he had a justifiable interest in asking him if he wanted his stomach pumped. This single question with its explanation, was not part of an interrogation designed to elicit incriminating statements, thus did not require a preliminary recitation of defendant's *Miranda* rights and waiver thereof.

The judgment is affirmed.

Hanson, J., and Ackerman, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.