THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ORLANDO ORTIZ, Defendant-Appellant.

(No. 57829;

First District (2nd Division)—November 13, 1973.

James J. Doherty, Deputy Defender, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago, for the People.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Defendant was charged with the unlawful use of weapons and failure to comply with state and city gun registration laws. After a bench trial he was found guilty of unlawful use of weapons,[1] and sentenced to one year probation with the first 90 days to be served in the House of Correction. On appeal defendant seeks a reversal of his conviction or a reversal and remandment for a new trial. He contends that (1) the trial court erred in failing to sustain defendant's motion to suppress the evidence; to wit, the gun; and (2) proof of defendant's guilt was not established beyond a reasonable doubt.

A Chicago police officer testified at the hearing on the motion to suppress that on September 23, 1971, at approximately 10:00 P.M., he observed defendant and a companion walking down the street. His attention was drawn to defendant because he knew defendant's companion as a prior offender, and has "processed him on prior occasions." The officer and his partner then curbed their squad car and motioned defendant and his companion to approach the car. As they approached, the wind caused defendant's jacket to open and the officer noticed the butt of a gun protruding from defendant's belt. The officer then placed defendant under arrest. After this testimony the court denied defendant's motion to suppress.

In addition to the above testimony which was introduced into the record at trial, the officer testified that the gun found on defendant was

---

[1] Ill. Rev. Stat. 1971, ch. 38, par. 24—1(a)(4).

inventoried and was a .25 caliber pistol. The officer conducted a "pat down" search of defendant after the arrest and did not find a state or city registration card for the gun. On redirect examination, he stated that he looked in defendant's wallet and did not see a registration card; on recrossexamination he testified: "I don't remember if he had a wallet. We normally have all things removed."

The trial court found defendant not guilty of violation of the gun registration charges.

Defendant argues that the action of the police officer in calling him to the car was an unreasonable stop, and resulted in an infringement of his constitutional right to freedom and privacy. Defendant concludes, therefore, that the observation of the gun was the result of an illegal stop, and that his motion to suppress should have been granted.

In support of this argument, defendant relies on Ill. Rev. Stat. 1971, ch. 38, par. 107—14 which provides in pertinent part:

> "A peace officer, after having identified himself as a peace officer, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense * * *."

■■ Defendant's reliance upon the above statute is misplaced. Our courts have held that the essence of a "stop" (or a "seizure," in the language of the Supreme Court in *Terry v. Ohio,* 392 U.S. 1, 20 L.Ed.2d 889, 38 S.Ct. 1868) is an element of force or threatened force which constitutes a restraint on the freedom to walk away. The mere calling to defendant to approach the police car did not amount to a "stop." (*People v. Hines,* 12 Ill.App.3d 582, 299 N.E.2d 581; *People v. Howlett,* 1 Ill.App.3d 906, 274 N.E.2d 885.) When the wind blew defendant's jacket open and the officer observed the gun, there arose probable cause to arrest defendant. For these reasons we conclude that the trial court's denial of the motion to suppress was proper.

Defendant's final contention is that the officer's testimony, the only testimony presented, was palpably unpersuasive, improbable and contradictory, and defendant, therefore, was not proven guilty beyond a reasonable doubt. Defendant bases his contention upon three facts: (1) the officer described the gun as a .25 caliber weapon at trial, whereas the complaint described it as a 6.35 caliber pistol; (2) the gun was not introduced into evidence; and (3) the trial court found defendant not guilty of the registration charges.

■■ The record does not support defendant's argument. The gun was described as a .25 caliber weapon by the officer at trial after it had been inventoried and identified. The variance between the complaint and

the evidence does not impair the credibility of the officer's testimony. The failure of the prosecution to introduce the weapon at trial did not impair the officer's credibility or raise a reasonable doubt of defendant's guilt. (*People v. Herrera*, 6 Ill.App.3d 898, 287 N.E.2d 87.) Defendant relies upon *People v. Burlinski*, 8 Ill.App.3d 800, 291 N.E.2d 339, to support his argument that the officer's testimony, found to be unreliable by the trial court as to the search of defendant for gun registration cards, raised a reasonable doubt concerning his entire testimony. In *Burlinski*, the court reversed a conviction for aggravated battery on the grounds that the police officers' testimony regarding the sale and possession of narcotics by defendant and the apprehension of defendant was so unreliable as to raise a reasonable doubt as to the aggravated battery conviction. However, the evidence in the instant case does not approach the magnitude and scope of the contradicting and impeaching testimony which pervaded the record in *Burlinski*. Here, the officer's testimony of the facts leading to defendant's arrest was clear and uncontraverted. From our review of the record we are convinced that defendant was proven guilty beyond a reasonable doubt of the unlawful use of weapons charge.

Defendant has filed a motion before this court for reduction of sentence pursuant to the Unified Code of Corrections, effective January 1, 1973. (Ill. Rev. Stat., 1972 Supp., ch. 38, pars. 1001—1—1 *et seq.*) Defendant was sentenced to one year probation with the first 90 days to be served in the House of Correction—a so-called "split-sentence." Section 1005—6—3 of the Code of Corrections provides in pertinent part:

"(d) The court shall not require as a condition of the sentence of probation or conditional discharge that the offender be committed to a period of imprisonment except under Article 7." [2]

In answer to defendant's motion, the State has filed a motion alleging that (1) a bill was subsequently passed by the legislature which permitted, *inter alia*, split-sentencing, and, although the bill was vetoed, the governor did not object to the split-sentencing provision, and the bill is now back in the legislature; and (2) Section 1005—6—3(d) violates the separation of powers mandate of the United States Constitution and Article I, Section 10 of the Illinois Constitution of 1970 which sets forth the objectives of penalties.

■■ Initially, we note that the bill permitting split-sentencing has not become the law of Illinois, and we cannot consider the "intent" of the

---

[2] Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—7—1:

"(a) A sentence of periodic imprisonment is a sentence of imprisonment to be served on certain days or during certain periods of days, or both, specified by the court as part of the sentence."

legislature in passing such a bill. As of this date, Section 1005—6—3(d) is the law of Illinois to which we must adhere.

■■ Secondly, we do not agree with the State that the prohibition against split-sentencing is a usurpation of judicial power. We agree that the power to impose a sentence as a punishment for crime is purely judicial. (*People v. Montana*, 380 Ill. 596, 44 N.E.2d 569.) However, the legislature has the power to determine the nature, character and extent of punishment in light of the public interest. (*People v. Smith*, 14 Ill.2d 95, 150 N.E.2d 815.) The prohibition of split-sentences indicates the legislature's redefinition of the nature and character of probation. The determination of whether defendants shall be admitted to probation, as well as the period of probation and the conditions of probation, within the limits set forth in the statute, remain in the discretion of the trial court.

We have studied cases which have held statutory provisions to be unconstitutional infringements upon judicial powers. However, we have found these authorities to be inapposite as they concern the power to provide rules governing appeals which power the Illinois Constitution has delegated to the Supreme Court. (*People ex rel. Stamos v. Jones*, 40 Ill.2d 62, 237 N.E.2d 495; *People v. Taylor*, 50 Ill.2d 136, 277 N.E.2d 878.)

■■■ For these reasons we conclude that section 1005—6—3(d) does not violate the Illinois Constitution. In light of the public policy expressed in the Code of Corrections, and to conform to the provisions of the Code, we hereby modify the order of probation by eliminating the condition of imprisonment in the House of Correction.[3] We affirm the judgment as modified.[4]

Judgment affirmed as modified.

LEIGHTON and HAYES, JJ., concur.

---

[3] Ill. Rev. Stat. 1971, ch. 110A, par. 615(b).

[4] We do not consider this modification to be a proscribed change from an order of incarceration to probation; rather we are modifying the order of probation.