# Michael T. Baldwin

## v.

# Commonwealth of Virginia

Record No. 910512

January 10, 1992

Present: Carrico, C.J., Compton, Stephenson, Whiting, Lacy, Hassell, JJ., and Poff, Senior Justice

192

*Ned M. Mikula (Rudy, Evans & Mikula,* on brief), for appellant.

*Michael T. Judge, Assistant Attorney General (Mary Sue Terry, Attorney General,* on brief), for appellee.

SENIOR JUSTICE POFF delivered the opinion of the Court.

We granted this appeal to consider whether an encounter between a policeman and the appellant, a pedestrian, was a seizure within the scope of the Fourth Amendment of the Constitution of

the United States, and if so, whether the policeman had reasonable, articulable cause to suspect the appellant of criminal conduct.

Michael Theodore Baldwin was charged with three offenses, *viz.*, drunk in public, possession of marijuana, and possession of psilocin (hallucinogenic mushrooms). The defendant filed a pretrial motion to suppress all of the Commonwealth's evidence on the ground that its discovery and seizure were tainted by an unconstitutional stop and search of his person. At a hearing conducted on that motion, the judge of the Circuit Court of Hanover County, sitting without a jury, heard testimony introduced by the defendant. The Commonwealth offered no evidence.

The trial court denied the motion to suppress. Finding that the arresting officer had failed to conduct a field sobriety test on the defendant, the court sustained his plea of not guilty to the charge of drunk in public.

Later, at a bench trial conducted on the drug charges, the Commonwealth's Attorney advised the court that "the defendant is ready to enter a conditional guilty plea today to allow him to appeal the suppression hearing motion to the Court of Appeals" and that "[t]here is also an agreement between the Commonwealth and the defendant as to punishment." The defendant entered the guilty pleas and, upon consideration of the evidence, the trial court convicted the defendant of the two possession offenses as charged in the warrant and in the indictment. Accepting the terms of the plea bargain, the court sentenced the defendant to 10 days in jail on the marijuana conviction, all suspended, and on the psilocin conviction, to 10 years in the penitentiary, all but 60 days suspended conditioned upon supervised probation. The Court of Appeals of Virginia denied the defendant's petition for appeal of the trial court's ruling on the motion to suppress, and we awarded the defendant this appeal.

We will review the facts disclosed by witnesses called by the defendant at the suppression hearing and, under familiar principles, we will consider their testimony in the light most favorable to the Commonwealth. Officer Roger Gilbert testified that another officer "on foot patrol" at Drummer Court had called him to report the possibility of "drunks in public in the parking lot and in the yard." As he drove into the parking lot about 11:30 that night, Gilbert saw a man, later identified as Baldwin, and a woman companion "at the end of the parking lot standing beside a dumpster". Stopping his car "[f]ifteen feet" from the couple, Gilbert "got out

of [the] car and went to them." He acknowledged that "maybe [he] did call towards — call for them" as they were "walking back towards apartments". As they were returning "back through to the dumpster area", Gilbert said, he "could notice that Mr. Baldwin was having trouble with his balance and . . . could smell the odor of alcoholic beverage about his person". Asked "had he been drinking", Baldwin "stated that he'd had ten beers which is too much." Gilbert added that Baldwin was "stagger-ing", that "[h]is face was flushed", and that he placed him under arrest for being drunk in public. Gilbert discovered and seized the contraband in a search of Baldwin's person incident to that arrest.

Julie Sweetman testified that she and Baldwin had left a party in progress at the apartments "to get some fresh air." As they were "walking back towards the house . . . [they] heard a noise. [They] turned around and it was the police car and the officer came out and asked [them] to come towards . . . him and he asked [them] some questions and he asked [them] if [they] had any ID." Sweetman said that Baldwin had drunk only "[t]wo beers" at the party and that his words were not "slurred" and he "didn't stumble or anything."

Testifying in his own defense, Baldwin said that he and Sweet-man had been standing together at a point near a trash dumpster located at the curb of the parking lot in front of the apartments. He explained that they had "proceeded to go back in the house" and had reached a point "on the sidewalk right near her front door" when they heard the police car enter the parking lot. The officer "put a big floodlight on [them] . . . and told [them] to come here, said you two, come over here." Baldwin said that Gil-bert then asked him for identification and whether he had been drinking. Baldwin testified that he had consumed only "three or four beers" that night and denied that he had told Gilbert that he had drunk too much.

On appeal, Baldwin argues, first, that the police officer had no objective reason to suspect him of criminal activity when he stopped him as he was walking towards the apartment and, in es-sence, that this stop constituted a seizure and a violation of his Fourth Amendment rights. Second, the defendant argues that, be-cause the only evidence of drug offenses considered by the trial court was incompetent as fruit of an unlawful seizure, we must reverse his convictions of those offenses and dismiss the warrant and the indictment. Because we hold that the initial encounter did

not amount to a seizure within the meaning of the Fourth Amendment, we need not reach the second argument.

■ The constitutional guarantee Baldwin invokes provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated . . . ." That guarantee applies as well to seizures of the person of an individual as to seizures of the houses, papers, and effects of an individual. *See Katz* v. *United States*, 389 U.S. 347, 351 (1967) ("[T]he Fourth Amendment protects people, not places").

■ The Supreme Court of the United States has identified two types of seizures of the person protected by the Fourth Amendment - arrest and investigatory stop. *Terry* v. *Ohio*, 392 U.S. 1 (1968); *see Zimmerman* v. *Commonwealth*, 234 Va. 609, 611-12, 363 S.E.2d 708, 709 (1988); *Leeth* v. *Commonwealth*, 223 Va. 335, 340, 288 S.E.2d 475, 478 (1982). An officer may effect a seizure by arrest only when he has probable cause to believe that the person seized has committed or is committing a criminal offense. *Dunaway* v. *New York*, 442 U.S. 200, 207-209 (1979). As *Terry* teaches, however, in the interest of "effective crime prevention and detection . . . a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." 392 U.S. at 22. In order to justify such a seizure, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21.

Having thus defined the two types of seizures of the person contemplated by the Fourth Amendment, the *Terry* Court noted:

Obviously, not all personal intercourse between policemen and citizens involves "seizures" of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred.

*Id.* at 19 n.16.

■ The principles announced in *Terry* have been repeatedly reviewed, explicated, and reaffirmed:

We adhere to the view that a person is "seized" only when, by means of physical force or show of authority, his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards. The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but "to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.

. . .

We conclude that a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a *reasonable person* would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

*United States* v. *Mendenhall*, 446 U.S. 544, 553-54 (1980) (opinion of Stewart, J.) (emphasis added) (footnote and citations omitted).

[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. Nor would the fact that the officer identifies himself as a police officer,

without more, convert the encounter into a seizure requiring some level of objective justification.

*Florida* v. *Royer*, 460 U.S. 491, 497 (1983) (plurality opinion) (citations omitted).
■ Pursuing that thesis, the Court has explained:

While most citizens will respond to a police request, the fact that people do so, and do so without being told that they are free not to respond, hardly eliminates the consensual nature of the response. Unless the circumstances of the encounter are so intimidating as to demonstrate that a *reasonable person* would have believed that he was not free to leave if he had not responded, one cannot say that the questioning resulted in a detention under the Fourth Amendment.

*I.N.S.* v. *Delgado*, 466 U.S. 210, 216 (1984) (citations omitted) (emphasis added). "This 'reasonable person' standard . . . ensures that the scope of the Fourth Amendment protection does not vary with the state of mind of the particular individual being approached." *Michigan* v. *Chesternut*, 486 U.S. 567, 574 (1988). "While the very presence of a police car driving parallel to a running pedestrian could be somewhat intimidating, this kind of police presence does not, standing alone, constitute a seizure." *Id.* at 575 (footnote and citation omitted). "[T]he 'reasonable person' test presupposes an innocent person." *Florida* v. *Bostwick*, 501 U.S. ____, ____, 111 S.Ct. 2382, 2388 (1991) (citing *Royer*, 460 U.S. at 519 n.4 (Blackmun, J. dissenting) (plurality opinion)).

Applying the principles articulated in *Terry*, *Mendenhall*, and their progeny, a number of subordinate federal courts have rejected a defendant's claim that an officer's conduct during the initial encounter amounted to a show of authority so intimidating as to constitute a Fourth Amendment seizure. *See e.g.*, *United States* v. *Moreno*, 897 F.2d 26, 28 (2d Cir.), *cert. denied*, *sub nom. Libreros* v. *United States*, 497 U.S. ____, 110 S.Ct. 3250 (1990) (officer "asked the defendants to 'come over here for a second' "); *United States* v. *Winston*, 892 F.2d 112, 116 (D.C. Cir. 1989), *cert. denied*, 497 U.S. ____, 110 S.Ct. 3277 (1990) ("subjective beliefs of the person approached are irrelevant to whether a seizure has occurred"); *United States* v. *Jaramillo*, 891 F.2d 620, 622 (7th Cir. 1989), *cert. denied*, 494 U.S. 1069, 110 S.Ct. 1791 (1990) (officer produced badge and identification and "asked if

the Jaramillos would speak to him"); *Coates* v. *United States*, 413 F.2d 371, 374 (D.C. Cir. 1969) ("submissiveness, or even fear, engendered in some persons by the mere presence of police officers does not raise a Constitutional issue").

In *Jones* v. *Commonwealth*, 230 Va. 14, 334 S.E.2d 536 (1985), this Court considered a similar claim. There, a policeman stopped a person, later identified as Jones, who resembled the description of a burglary suspect and asked Jones for identification. Jones produced an identification card bearing a name and address different from that Jones had given. The officer then placed Jones under arrest for violation of a county code provision making it unlawful to refuse an officer's request for identification. In a search of Jones' person incident to the arrest, the officer discovered heroin. On appeal of his convictions of the two offenses charged against him, Jones argued that the county code provision violated his Fourth Amendment rights.

Rejecting that argument and affirming both convictions, we said:

> Because *Terry* provides a complete, independent basis for the detention and questioning of Jones, we are inclined to agree with the Attorney General that . . . the Arlington County Code does not "violate or even implicate the Fourth Amendment."

*Id.* at 20, 334 S.E.2d at 540. *See also, Richards* v. *Commonwealth*, 8 Va. App. 612, 615, 383 S.E.2d 268, 270 (1989) ("the Fourth Amendment was not implicated when [the officer] asked appellant . . . if he had any identification").

Applying the *Terry-Mendenhall* tests, courts in other jurisdictions have agreed that not every police-citizen encounter is a seizure under the Fourth Amendment. *See e.g., People* v. *King*, 72 Cal. App.3d 346, 348, 139 Cal. Rptr. 926, 927 (1977) (no seizure when officer called to person walking away from him, "Danny, stop, I want to talk to you"); *Richardson* v. *United States*, 520 A.2d 692, 696 (D.C. App.), *cert. denied*, 484 U.S. 917 (1987) ("where . . . a police officer approaches an individual on the street, identifies himself as a police officer, and asks the individual a few questions, a seizure has not occurred for Fourth Amendment purposes"); *United States* v. *Burrell*, 286 A.2d 845, 846 (D.C. App. 1972) (where officer placed his hand on appellee's el-

bow and asked to speak with him this "initial confrontation with appellee did not amount to . . . a 'seizure', within the purview of *Terry*"); *People* v. *Tilden*, 70 Ill. App.3d 859, 863, 388 N.E.2d 1046, 1049 (1979) (where officer asked person walking away from him to return and produce identification "it cannot be said that . . . [this] constituted a *Terry* stop"); *People* v. *Ortiz*, 18 Ill. App.3d 431, 433, 305 N.E.2d 418, 420 (1973) ("mere calling to defendant to approach the police car did not amount to a 'stop' ").

In determining whether police detention of a person constitutes a seizure by investigatory stop, "cognizance must be taken of the 'totality of the circumstances - the whole picture.' " *Leeth* v. *Commonwealth*, 223 Va. at 340, 288 S.E.2d at 478 (quoting *United States* v. *Cortez*, 449 U.S. 411, 417 (1981)). If that determination is negative, the detention is not unreasonable and, hence, does not implicate the Fourth Amendment. Accordingly, we look to "the whole picture" to decide whether Officer Gilbert, "by means of physical force or show of authority, . . . in some way restrained [Baldwin's] liberty", *Terry*, 392 U.S. at 19 n.16, when he called to Baldwin as Sweetman and Baldwin were walking away from him towards the apartment.

Focusing our review upon that initial encounter, we find no evidence of "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall*, 446 U.S. at 554.

Nor does the record before us reflect any other "circumstances that might indicate a seizure." *Id*. Even if, as Baldwin testified, the officer used a "floodlight" rather than the headlights of the car when he told the couple to "come over here", this circumstance was no more an "intimidating" show of authority than the "presence of a police officer driving parallel to a running pedestrian". *Chesternut*, 486 U.S. at 575.

Considering the totality of the circumstances and applying the *Terry-Mendenhall* standard, we conclude that Baldwin was not seized within the meaning of the Fourth Amendment until Gilbert placed him under arrest following his discovery of evidence of intoxication. The trial court found that the evidence of probable cause to make that arrest was sufficient, Baldwin does

not challenge that finding, and we will uphold the rulings below denying the motion to suppress and affirm the judgment.

*Affirmed.*

JUSTICE COMPTON, dissenting.

In determining whether police detention of a defendant constitutes a seizure under the Fourth Amendment, a court should take cognizance of the totality of the circumstances — the whole picture. *Leeth* v. *Commonwealth*, 223 Va. 335, 340, 288 S.E.2d 475, 478 (1982). The picture the majority displays in this case is underexposed because a description of the circumstances surrounding the incident are not fully developed in its opinion.

The relevant facts are undisputed. The defendant was a 21-year-old college student who, with a young female friend, had stepped outside an apartment filled with people for a breath of fresh air at 11:45 p.m. The couple was standing on grass adjacent to a parking lot curb near a garbage container. Neither person was holding any sort of beverage or giving any indication of criminal activity. They were merely talking.

As the pair turned to walk back into the apartment building, a Town of Ashland police officer, responding to another officer's information of "possible drunk in publics," drove his police vehicle into the parking lot "loud and going fast" and shone a "big floodlight," affixed to the side of the police vehicle, on the two pedestrians *from a distance of 15 feet*. The officer "call[ed] for them" and commanded, "you two, come over here." Identifying the caller as a police officer, the students reacted to the display of authority and came "over" to the officer.

Viewing all the circumstances surrounding this incident, I submit that a reasonable person in the defendant's situation would not have believed that he was free to disregard the command of this police officer, and free to merely walk away. This is not, as the majority concludes, inoffensive contact between a member of the public and the police. Rather, given the defendant's age, the proximity of the searchlight to the couple, and the other circumstances of the encounter, the contact was intimidating and amounted to impermissible harassment of private citizens who were minding their own business.

At the moment of the commotion caused by the arrival of the officer — loud and going fast — shining a big floodlight — from

15 feet — the officer had no reasonable suspicion, based on objective facts, that the defendant was involved in criminal activity. *See Zimmerman* v. *Commonwealth*, 234 Va. 609, 611-12, 363 S.E.2d 708, 709 (1988). It was only *after* the initial stop that the officer detected the smell of alcohol and the staggering.

Consequently, I believe that the investigatory stop was unlawful, that the motion to suppress should have been sustained, and that the charges against the defendant should have been dismissed.