## CIRCUIT COURT OF THE CITY OF RICHMOND

Commonwealth of Virginia

v.

Monroe

November 15, 1995

Case No. F-95-3005

BY JUDGE DONALD W. LEMONS

This matter is before the Court on the defendant's Motion to Suppress evidence seized on August 30, 1995. The Court heard evidence in support of the motion and the arguments of counsel on October 26, 1995. For the reasons stated below, the defendant's Motion to Suppress is denied.

At approximately 11:00 p.m. on August 30, 1995, Officer O'Connor and Officer Fults were on patrol in the 3200 block of Third Avenue. From their marked patrol car, the officers observed three people, including the defendant, standing at the rear of a parked car on the street.

As the patrol car approached the group, the defendant, seeing the officers, took a step back and threw a small object behind the parked car. O'Connor testified that he could not identify what the object was. Despite a subsequent search of the area, the object was not recovered.

The officers stopped the patrol car and exited the vehicle. O'Connor approached the defendant and asked, "Hey, how you doing?" The defendant replied, "I'm drunk."

After receiving the defendant's response, O'Connor asked the defendant if he was carrying a gun. After saying "No," the defendant reached behind his back. O'Connor told the defendant to stop reaching behind his back. Undaunted, the defendant completed the motion, raising up his shirt so that O'Connor could see the defendant's midsection.

O'Connor then attempted to conduct a pat down search for weapons. After patting the defendant's front pockets, O'Connor began to reach for

the defendant's back pockets. While O'Connor was reaching for the back pockets, the defendant backed away from the officer and exclaimed "Not tonight!" and ran from the scene. The officers gave chase and ultimately caught the defendant. As the officers were in the process of apprehending the defendant, the defendant removed a loaded .380 hand gun from his pants and threw it on the ground. After a brief struggle, the defendant was placed under arrest.

Having been previously convicted of a felony, the defendant was charged with the unlawful possession of a firearm. The defendant's Motion to Suppress is presently before the Court.

Despite its relative brevity, the defendant's encounter with O'Connor had several legally significant moments. In determining whether or not the gun should be suppressed, the Court must review each of these moments.

The first significant contact between the defendant and O'Connor occurred when O'Connor asked the defendant how he was doing and whether or not the defendant was carrying a gun. It is clear that it is permissible for a police officer to ask such questions. As the Virginia Supreme Court has noted:

> [L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street, or in another public place, by asking if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification.

*Baldwin v. Commonwealth*, 243 Va. 191, 196-97 (1992), *quoting*, *Florida v. Royer*, 460 U.S. 491, 497 (1983) (plurality opinion) (citations omitted).

In response to O'Connor's questions, the defendant stated that he was drunk. This response was sufficient to provide O'Connor with a reasonable, articulable suspicion that the defendant was engaged in criminal activity. Specifically, because the defendant made the statement while standing on a public street, O'Connor had reason to believe that the defendant was violating Va. Code § 18.2-388, the "drunk-in-public" statute.

Section 18.2-388 provides, in part, "If any person profanely curses or swears or is intoxicated in public, whether such intoxication results from

alcohol, narcotic drug, or other intoxicant or drug of whatever nature, he shall be deemed guilty of a Class 4 misdemeanor."

Given the defendant's admission, the officer's further investigation of the circumstances was proper. As the Court of Appeals has noted, "it would have been 'poor police work' for an officer, with a report of criminal activity, to have failed to investigate the alleged crime." *Lee v. Commonwealth*, 18 Va. App. 235, 239 (1994) (citation omitted). The fact that the report of criminal activity came from the suspect does not alter the analysis.

Despite the lack of an arrest, O'Connor clearly had a reasonable articulable suspicion that the defendant was engaged in criminal activity, namely a violation of § 18.2-388. However, a reasonable articulable suspicion that a suspect is engaged in criminal activity is not sufficient to justify a pat down search for weapons. The Court of Appeals has held that for a pat down search for weapons to be justified, the officer must have a reasonable articulable suspicion that the suspect is engaged in criminal activity *and* a reasonable articulable suspicion that the suspect is armed and dangerous. *See, e.g., Stanley v. Commonwealth*, 16 Va. App. 873, 875 (1993); *Sattler v. Commonwealth*, 20 Va. App. 366 (1995).

"In deciding whether to . . . effect a pat-down search an officer is 'entitled to rely upon the totality of the circumstances — the whole picture'." *Peguese v. Commonwealth*, 19 Va. App. 349, 351 (1994). The Court of Appeals has held that:

> Once a police officer has properly detained a suspect for questioning, he may conduct a limited pat-down search for weapons if he reasonably believes that the suspect might be armed and dangerous . . . . Only where the officer can "point to particular facts from which he reasonably inferred that the individual was armed and dangerous" is he justified in searching for weapons.
>
> "Among the circumstances to be considered in connection with this issue are the 'characteristics of the area' where the stop occurs, the time of the stop, whether late at night or not, as well as any suspicious conduct of the person accosted such as an obvious attempt to avoid officers or any nervous conduct on the discovery of their presence." To this we add the character of the offense which the individual is suspected of committing as a circumstance which the officer may consider.

*Williams v. Commonwealth*, 4 Va. App. 53, 67 (1987) (citations omitted). In this case, the "totality of the circumstances" include:

(1) The encounter took place late at night;

(2) The encounter was in an area known for drug dealing and the officer had previously made drug arrests at the location;

(3) Other people were present;

(4) The defendant had thrown something to the ground immediately upon seeing the officers approach;

(5) The defendant admitted that he was drunk;

(6) The defendant was known to the officer, who had previously encountered the defendant in a stairwell with a 9 mm pistol on the concrete close to the defendant and 9 mm ammunition on the defendant's person; and

(7) The defendant backed away from the officer and made a "reaching" motion with his hands to his back near his waistband, a location where the officer could reasonably believe contained a weapon.

Given the totality of the circumstances presented, the officer had reasonable articulable suspicion that an offense had occurred and reasonable articulable suspicion that the defendant was armed and dangerous.

The defendant's Motion to Suppress is denied.