COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Elder and Senior Judge Cole
Argued at Richmond, Virginia


GEORGE GREGORY BOONE
                                      MEMORANDUM OPINION[*] BY
v.        Record No. 2575-95-2       JUDGE SAM W. COLEMAN III
                                           FEBRUARY 4, 1997
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                        Thomas N. Nance, Judge

             Patricia P. Nagel, Assistant Public Defender
             (David J. Johnson, Public Defender, on
             brief), for appellant.

             Marla Graff Decker, Assistant Attorney
             General (James S. Gilmore, III, Attorney
             General, on brief), for appellee.


        George Gregory Boone was arrested for trespassing at

Whitcomb Court, which is a multi-unit housing development owned

by the City of Richmond Redevelopment and Housing Authority.  The

arresting officers searched Boone incident to the arrest and

discovered in his right pants pocket two plastic baggies

containing cocaine.  On appeal from the trespass and possession

of cocaine convictions, the issues are (1) whether Boone's

statements to the officers when they first approached him, which

statements led to the trespass charge, should have been

suppressed because they were given involuntarily in violation of

Miranda v. Arizona, (2) whether the officers illegally seized the

───────────────

        [*]Pursuant to Code § 17-116.010 this opinion is not

designated for publication.

cocaine from Boone in violation of the Fourth and Fourteenth Amendments, and (3) whether the evidence is sufficient to support the trespass conviction.  We find no error and affirm the trespass and possession of cocaine convictions.

On June 9, 1995, around 6:45 p.m., two City of Richmond uniformed police officers were on routine patrol near Whitcomb Court.  After parking their patrol car, they walked into an area in Whitcomb Court known as a "cut," which are areas shielded between two apartment buildings known by police to be areas in Whitcomb Court where drugs are bought and sold.  Due to the considerable drug activity, a "No Trespassing" sign had been placed on each apartment building in the Whitcomb Court complex.  As the officers walked into the "cut" a number of people who were congregated there scattered and someone yelled "Five-O," a common street warning that police are in the area.

The defendant, who was in the vicinity where the people were congregated, was walking toward the officers.  As he approached, one of the officers "just walked up to [the defendant] and started talking to him."  The officer greeted the defendant and asked him whether he lived in Whitcomb Court.  The defendant responded, "No."  The officer then asked if he was "visiting anybody."  The defendant again said, "No."  After the officer determined that the defendant neither lived nor was visiting there, the officer asked the defendant if he had drugs.  When the defendant responded that he did not, the officer asked if he

- 2 -

could check the defendant's pockets for drugs.  The defendant said "No," and turned and ran from the officer.

The officer pursued the defendant and overtook him after about forty or fifty feet.  The officer tackled the defendant, handcuffed him, and placed him under arrest for trespassing.[1] After the arrest, the officer searched the defendant and found

---

[1]Code § 18.2-119 provides as follows:

Trespass after having been forbidden to do so; penalties.
     If any person without authority of law goes upon or remains upon the lands, buildings or premises of another, or any portion or area thereof, after having been forbidden to do so, either orally or in writing, by the owner, lessee, custodian or other person lawfully in charge thereof, or after having been forbidden to do so by a sign or signs posted by such persons or by the holder of any easement or other right-of-way authorized by the instrument creating such interest to post such signs on such lands, structures, premises or portion or area thereof at a place or places where it or they may be reasonably seen, or if any person, whether he is the owner, tenant or otherwise entitled to the use of such land, building or premises, goes upon, or remains upon such land, building or premises after having been prohibited from doing so by a court of competent jurisdiction by an order issued pursuant to Code §§ 16.1-253, 16.1-253.1, 16.1-278.2 through 16.1-278.6, 16.1-278.8, 16.1-278.14, 16.1-278.15, or Code § 16.1-279.1, or an ex parte order issued pursuant to Code § 20-103, and after having been served with such order, he shall be guilty of a Class 1 misdemeanor.  This section shall not be construed to affect in any way the provisions of Code §§ 18.2-132 through 18.2-136.

two plastic bags containing cocaine in the defendant's right pants pocket. The defendant was then charged with possessing cocaine in violation of Code § 18.2-250.

<u>SUPPRESSION OF DEFENDANT'S STATEMENTS</u>

The defendant contends that his responses to the police officer's questions which led to the trespassing charge and the fruits that flowed from his arrest for trespassing should have been suppressed because he gave them involuntarily in violation of his Fifth Amendment rights as defined in <u>Miranda v. Arizona</u>.

> <u>Miranda</u> warnings are required whenever a suspect is subjected to "custodial interrogation."  Every detention does not necessarily constitute custodial interrogation for purposes of <u>Miranda</u>. A person is in custody for <u>Miranda</u> purposes only when the person's "freedom of action is curtailed to a 'degree associated with formal arrest.'"  If an officer has a reasonable, articulable basis to suspect that an individual has committed or is about to commit a crime, the officer is justified in briefly detaining the suspect and asking him a limited number of questions without giving <u>Miranda</u> warnings in order to quell or confirm the officer's suspicion of criminal activity.

<u>Cherry v. Commonwealth</u>, 14 Va. App. 135, 140, 415 S.E.2d 242, 244 (1992) (citations omitted).

The holding in <u>Miranda</u> was designed to provide a warning and safeguard from those types of prolonged or intense interrogations that are commonly associated with station house questioning.  <u>See</u> <u>Miranda v. Arizona</u>, 384 U.S. 436, 438-39 (1966).  <u>Miranda</u> warnings are not required when there has been a consensual

encounter or brief detention to investigate suspicious activity or circumstances. Id.

> The brief detention and nature of the questioning in [Terry-type detentions] is dramatically different from the coercive influences in "police dominated, station house interrogations" which are frequently prolonged and against which Miranda was designed to protect. Miranda's prophylactic rule recognizes that a person questioned in a custodial situation is subjected to compelling influences which might induce him "to speak where he would not otherwise do so freely." Whether a suspect is "in custody" turns upon "how a reasonable man in the suspect's position would have understood his situation." Thus, a suspect is "in custody" when the objective circumstances would lead a reasonable person to believe he was under arrest, thereby subjecting him or her to pressure impairing the free exercise of the privilege against self-incrimination.

Cherry, 14 Va. App. at 140, 415 S.E.2d at 244.

In the instant case, the confrontation between the defendant and the officer, who inquired about the defendant's presence in Whitcomb Court, was either a consensual encounter, see Baldwin v. Commonwealth, 243 Va. 191, 196, 413 S.E.2d 645, 647-48 (1992), or, at most, a brief investigatory detention to determine whether criminal activity may have been afoot, see Terry v. Ohio, 392 U.S. 1, 21 (1968). The defendant, who ran, did not consider himself to have been arrested; he did not submit to a show of authority, nor did he feel that he did not have the right to leave. The initial encounter consisted of the officer asking the defendant whether he lived in or was visiting someone in Whitcomb Court or whether he possessed drugs or would consent to having

his pockets searched.  Regardless of the defendant's subjective belief about whether he felt free to leave, no reasonable person would have felt that he had been arrested or taken into custody under these circumstances.  See Stansbury v. California, 511 U.S. 318, 323 (1994), and Berkemer v. McCarty, 468 U.S. 420, 442 (1984).  Accordingly, because the questioning of Boone concerning his purpose for being in Whitcomb Court did not occur during a custodial interrogation, but rather during a consensual encounter or brief investigatory detention, the officers were not required to give him the warnings as dictated by Miranda.  Thus, the trial court did not err in refusing to suppress Boone's statements.

SUPPRESSION OF THE COCAINE

We next consider the defendant's contention that the trial court erred by refusing to suppress the cocaine which the officers seized from the defendant because when they searched him they violated his Fourth Amendment privacy protection as guaranteed by the Fourteenth Amendment.

Critical to the inquiry is determining when Boone was seized for purposes of the Fourth Amendment.  Boone contends that he was seized when the officer first approached him and began asking him questions relative to both trespass and drug charges.  He asserts that, because the officer was in uniform, wearing a badge, and carrying a weapon, no reasonable person would have felt free to leave after the questioning began and, thus, he was seized.  Therefore, the defendant claims, because the officers had no

reason to suspect him of trespassing or engaging in drug activity the detention was illegal.

> The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but "to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.

United States v. Mendenhall, 446 U.S. 544, 553-54 (1980) (citation omitted). For a police officer to merely approach a citizen on the street and ask the individual questions is a consensual encounter and does not implicate the Fourth Amendment. Buck v. Commonwealth, 20 Va. App. 298, 301-02, 456 S.E.2d 534, 535-36 (1995); see Baldwin v. Commonwealth, 243 Va. 191, 196, 413 S.E.2d 645, 647-48 (1992). Unless a police-citizen encounter is accompanied by some show of force or authority or some coercion by the police officer that would cause the citizen reasonably to believe that he was not free to leave and was required to comply, then there has been no detention that implicates the Fourth Amendment. Greene v. Commonwealth, 17 Va. App. 606, 608, 440 S.E.2d 138, 139-40 (1994).

Viewing the evidence in the light most favorable to the Commonwealth, as we must do when reviewing a trial court's denial of a motion to suppress evidence, Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731, cert. denied, 449 U.S. 1017

- 7 -

(1980), the police officer made no show of authority or force and used no coercion that would cause a person reasonably to have believed that he was not free to leave. Although Boone's subjective state of mind does not control the determination as to whether he was seized, see Michigan v. Chesternut, 486 U.S. 567, 574 (1988), in making the objective determination whether a person would feel free to leave, it is significant to note that Boone did, in fact, leave. At that point in time, the police officer had not seized Boone.

No seizure or detention of Boone occurred until after he fled and when the officer physically tackled and subdued him. See California v. Hodari D., 499 U.S. 621, 626-27 (1991); Woodson v. Commonwealth, 245 Va. 401, 405-06, 429 S.E.2d 27, 29 (1993). At that time the officer had probable cause to believe that Boone was trespassing in Whitcomb Court. "No Trespassing" signs were posted on the apartment buildings and Boone told the officer that he did not live there and was not visiting anyone there. Even if the officers had initiated the trespass investigation as a pretext to allow them to further investigate whether Boone was involved in drug activity, once the officers had probable cause to believe that Boone was trespassing the legality of seizing and charging him with that offense satisfies the Fourth Amendment requirement that the seizure be reasonable. See Whren v. United States, 116 S. Ct. 1769 (1996). Thereafter, the officer had the right to search Boone incident to the arrest and the cocaine

found as a result of that search was legally seized.  See Warden v. Hayden, 387 U.S. 294, 310 (1967).  Accordingly, the trial court did not err by overruling the motion to suppress the cocaine.

> SUFFICIENCY OF EVIDENCE -- TRESPASS
> A person is guilty of trespassing "if [that] person without authority of law goes upon or remains upon the lands, buildings or premises of another, or any portion or area thereof, after having been forbidden to do so, either orally or in writing, by the owner . . . or other person lawfully in charge thereof, or after having been forbidden to do so by a sign or signs posted by such persons."  Code § 18.2-119.  Although the criminal trespass statute does not contain an express requirement of intent, the statute has been construed to require proof of a willful trespass.

Jones v. Commonwealth, 18 Va. App. 229, 232, 443 S.E.2d 189, 190 (1994) (citations omitted).

When reviewing whether the evidence is sufficient to support a trespass conviction, we view the evidence in the light most favorable to the prevailing party, which is the Commonwealth. Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).  Nevertheless, Boone contends that the testimony of his friend, Henry Burns, who explained that he had dropped Boone off and had given him directions to a bus stop which required that Boone walk through Whitcomb Court, absolved Boone of having a willful or criminal intent to trespass.  Boone argues that on these facts he was in Whitcomb Court under a claim of right. Even accepting as true Burns' explanation of why Boone was at

Whitcomb Court, that does not absolve him of trespass.

Admittedly, if one enters or stays upon land under a bona fide claim of right, the criminal intent necessary to convict of criminal trespass is negated.  Reed v. Commonwealth, 6 Va. App. 65, 71, 366 S.E.2d 274, 278 (1988).  "[A] bona fide claim of right is a sincere, although perhaps mistaken, good faith belief that one has some legal right to be on the property.  The claim need not be one of title or ownership, but it must rise to the level of authorization."  Id.  The authorization or consent to be on the property must be given by a person with authority to give such consent in order for the claim of right to be in good faith.  See, e.g., State v. Hoyt, 304 N.W.2d 884, 889 (Minn. 1981).

Here, accepting Burns' explanation as true, which the fact finder was not required to do, Boone knew that Burns did not own property or live in Whitcomb Court, he was merely visiting his girlfriend.  Burns was not an owner, tenant, or licensee of the property.  He had no authority to consent to Boone's presence on the property or to authorize him to disregard the "No Trespassing" signs and to cross the property.  Boone could not have had a good faith, reasonable belief that Burns' permission to enter the property, which was clearly marked "No Trespassing," entitled him to enter the property.

Accordingly, the trial court did not err in finding that Boone was not in Whitcomb Court under a legitimate claim of right; he did not live there, was not visiting a resident there,

and had been forbidden by the "No Trespassing" signs from being there.  Thus, the evidence is sufficient to support the trespass conviction.

<u>Affirmed</u>.