# CIRCUIT COURT OF THE CITY OF RICHMOND

Commonwealth of Virginia

v.

Robert Leroy Conley

August 29, 2000

Indictment for Credit Card Theft: F-00-2539
Indictment for Felony Petit Larceny: F-00-2538

BY JUDGE MARGARET P. SPENCER

The Defendant seeks to suppress evidence procured by a warrantless search of his person by a Virginia Commonwaelth University police officer. After reviewing the Motion to Suppress and the evidence presented at the hearing on the matter, Defendant's Motion to Suppress is denied. The search and seizure here was an investigative detention based on the officer's reasonable suspicion that the Defendant was engaged in a criminal activity. It therefore fulfills the requisites of a "*Terry* stop." *Terry v. Ohio*, 392 U.S. 1 (1968).

On April 12, 2000, at approximately 12:00 p.m., Officer A. J. Reddick was patrolling MCV Hospital when he received a call from the MCV security supervisor alerting him of a "suspect who fit the description of a larceny suspect" near the information desk in the main lobby of the hospital. (Transcript at 7, 10.) The officer approached this suspect, whom he identified as the Defendant. When the officer approached Defendant, the MCV security supervisor was present and informed him that the missing items included wallets and credit cards. (Tr. at 8.)

Officer Reddick observed that Defendant was "fidgety," "sweating," and "nervous" and asked him if he had a purpose at MCV. Defendant said that he was a patient in the ACC building. The officer confirmed that Defendant was a patient in the ACC building, but noted that the ACC building does not connect to the main hospital. (Tr. at 11-12.)

Officer Reddick explained to Defendant that he "fit the description of a larceny suspect for the north hospital" and told Defendant he was a suspect in this larceny investigation. (Tr. at 12.) Officer Reddick asked Defendant for permission to pat him down for weapons. When the Defendant did not consent, Officer Reddick gave him his *Miranda* warnings and Defendant then consented to the pat down for weapons. (Tr. at 12-13.) Upon searching Defendant, Officer Reddick recovered evidence the Commonwealth seeks to admit in Defendant's trial for larceny and credit card theft. (Tr. at 13.)

Officer Reddick testified the Defendant's demeanor indicated he might have a weapon and caused the officer to fear for his safety. (Tr. at 19-20.) Defendant seemed nervous. (Tr. at 10.) Defendant also carried a clothing article wrapped around his hand in a manner that suggested he was concealing a weapon. (Tr. at 19.) The officer also noted a large bulge in Defendant's pocket that could have been a weapon, and the Defendant was not in the area of the hospital where he was receiving medical treatment. (Tr. at 12, 21.) Finally, Officer Reddick testified it was his intention to place Defendant under investigative detention and, therefore, he gave Defendant his *Miranda* warnings. (Tr. at 16.)

There are three categories of police-citizen confrontations. These categories, which include consensual encounters, *Terry* stops, and arrests, are discussed below as each category relates to the arguments made by counsel in this case.

### Consensual Encounters

In *McGee v. Commonwealth*, 25 Va. App. 193 (1997), the Court held "[w]hen the police expressly inform an individual that they have received information that the individual is engaging in criminal activity, the police 'convey a message that compliance with their requests is required'." *Id.* at 200. In this situation, a reasonable person would probably not feel free to leave and the detention is a seizure. *Id.*

Once a seizure has occurred, the police must have a reasonable, articulable suspicion for the detention and may not rely on a defendant's express or implied consent. *Id.* at 202. Because the seizure in *McGee* was unlawful under *Terry*, the evidence obtained should have been suppressed. *Id.* at 203.

Officer Reddick told the Defendant he fit the description of a larceny suspect. (Tr. at 12.) In accord with *McGee*, this action carries significant weight in determining whether a reasonable person would feel free to leave.

After telling Defendant he was a larceny suspect, the officer gave Defendant the *Miranda* rights (Tr. at 12), which are typically given to a person is in police custody. Although the Commonwealth argued that the *Miranda* warnings actually cured the *McGee* problem here, this argument is tenuous. *Miranda* warnings act as a prophylactic cure for Fifth and Sixth Amendment issues, but do not address Fourth Amendment issues. *See Miranda v. Arizona,* 384 U.S. 436 (1966).

Considering the totality of the circumstances, a reasonable person would not feel free to leave. Thus, the officer's detention of Defendant was not consensual. It was a seizure under the Fourth Amendment.

### Terry Stop

In a lawful *Terry* stop, an officer who lacks probable cause to arrest may approach and investigate a person suspected of engaging in a criminal activity. See *Baldwin v. Commonwealth,* 243 Va. 191 (1992) (citing *Terry*). The officer must have a reasonable, articulable suspicion for the detention. *Terry,* 392 U.S. at 22. In determining whether an officer possesses this reasonable, articulable suspicion, courts must consider the totality of the circumstances. *United States v. Cortez,* 449 U.S. 411 (1981).

An anonymous tip which is sufficiently corroborated can furnish the level of suspicion required to make an investigative stop. *See McGee,* 25 Va. App. at 202. In *McGee,* the police did not have a reasonable, articulable suspicion when the officer proceeded on an anonymous, uncorroborated tip. The officer did not personally observe any "suspicious activity or furtive gestures by the defendant . . . nothing that suggested . . . that the defendant may have been or was about to be engaged in criminal activity." *Id.* at 203.

In *Jackson v. Commonwealth* (Va. App. 2000), on the other hand, the stop was lawful under *Terry* where the defendant matched the physical description in the anonymous tip and demonstrated suspicious behavior which was observed by the officer. Defendant's suspicious behavior included walking quickly past the officers, failing to respond to the officer's questions, and reaching down quickly to fumble with something in his pants. *Id.*

In this case, Officer Reddick's information was not provided by an anonymous informant. He received information from the MCV security supervisor and another security employee. (Tr. at 6.) The Defendant not only fit the description of the larceny suspect, but also appeared nervous (Tr. at 10), was unable or refused to explain his presence in a wing of the hospital that was different from the area where he was medically treated (Tr. at 12, 22), wore a clothing article wrapped around his hand in a manner that might

conceal a weapon (Tr. at 19), and had a large bulge in his pocket that could have been a weapon. (Tr. at 21.) These facts, reliable, identifying information coupled with the officer's own observations of Defendant, provided a reasonable, articulable suspicion to detain Defendant for further investigation.

Once a person is lawfully detained for an investigative stop, a police officer may conduct a pat down for weapons if the officer reasonably fears for his own safety or the safety of others. *Terry*, 329 U.S. at 30. Officer Reddick conducted a pat down search of Defendant after reading Defendant his *Miranda* rights and requesting Defendant's permission. The officer was concerned for his own safety. (Tr. at 20.) Defendant's nervous demeanor, the presence of the clothing wrapped around Defendant's hand, and a bulge visible in Defendant's pocket are all facts which justify the officer's decision. (Tr. at 19-21.)

Although Defendant's counsel argued *Florida v. J. L.*, 120 S. Ct. 1375 (2000), requires "more than an indication that a person is armed before" a stop and frisk, this reading of the case is incorrect. (Tr. at 30.) *Florida v. J. L.* held that a person cannot be stopped and frisked if the seizure is based solely on information from an anonymous tip that the person carried a weapon. *Id.* The facts of this case are distinguishable because the informant was not anonymous and the officer observed suspicious behavior by the Defendant.

For these reasons, Officer Reddick stopped Defendant and conducted a pat down for weapons based on a reasonable, articulable suspicion that Defendant was engaged in criminal activity. Officer Reddick's actions were incident to a lawful *Terry* stop.

### Arrest

An arrest is highly intrusive and must be based on probable cause. *McGee*, 25 Va. App. at 198. If the arrest is lawful, an officer may conduct a search incident to arrest either at the place of arrest or when the defendant is processed at the jail. *Greenfield v. Commonwealth*, 214 Va. 710 (1974). Alternatively, a warrantless search providing probable cause for an arrest cannot be justified as a search incident to arrest. *Smith v. Ohio*, 494 U.S. 541 (1990).

Officer Reddick did not have probable cause to arrest the Defendant. The officer testified his decision to detain Defendant was based on his suspicion Defendant was involved in criminal activity. (Tr. at 16, 19.) Officer Reddick developed probable cause to arrest Defendant only after discovering items allegedly missing from MCV hospital in the process of patting down Defendant for weapons. (Tr. at 13.)

Defendant's counsel claimed Defendant was not free to leave and was read his *Miranda* rights because he was, in fact, placed under arrest. (Tr. at 27.) As discussed herein, Defendant was not free to leave under the *McGee* standard. This restriction on Defendant's freedom to leave was a seizure and, under the Fourth Amendment, an officer must have either probable cause to arrest a person or a reasonable, articulable suspicion to detain a person in order to justify this seizure. *McGee*, 25 Va. App. at 198. Here, the officer had a reasonable, articulable suspicion to support his investigative detention of the Defendant.

The officer read Defendant his *Miranda* rights, a fact which contributes to the conclusion that a reasonable person would not feel free to leave. It does not necessarily follow, however, that Defendant was under arrest. *Miranda v. Arizona*, 384 U.S. at 471. Officer Reddick's did not tell Defendant he was under arrest and the facts do not indicated that Defendant was under arrest. The officer was investigating a reported larceny and he placed Defendant under lawful, investigative detention.

In conclusion, the search and seizure was a lawful *Terry* stop and the evidence seized as a result of that stop is admissible in the case at bar. Defendant's motion to suppress is denied. This case is continued for trial.