COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Humphreys and Senior Judge Annunziata
Argued at Richmond, Virginia


JAYVON LARTAY BASS

                                                        MEMORANDUM OPINION[*] BY
v.        Record No. 0304-08-2             JUDGE ROSEMARIE ANNUNZIATA
                                                        JANUARY 20, 2009
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Bradley B. Cavedo, Judge

Karen L. Stallard, Supervising Appellate Defender (Cassandra M.
Hausrath, Assistant Public Defender, on briefs), for appellant.

Joanne V. Frye, Assistant Attorney General (Robert F. McDonnell,
Attorney General, on brief), for appellee.


Jayvon Lartay Bass (appellant) was indicted for possessing cocaine with the intent to

distribute it.  Appellant moved to suppress the evidence, claiming the police seized and searched

him in violation of his Fourth Amendment rights.  The trial court denied appellant's motion.

Appellant entered a conditional guilty plea and now contends on appeal that the trial court erred in

denying the motion to suppress.  Finding no error, we affirm the trial court's decision.

FACTS

"[I]n considering a trial court's ruling on a suppression motion, we view the evidence in

the 'light most favorable to . . . the prevailing party below,' the Commonwealth in this instance,

and the decision of the trial judge will be disturbed only if plainly wrong."  Greene v.

Commonwealth, 17 Va. App. 606, 608, 440 S.E.2d 138, 139 (1994) (quoting Commonwealth v.

Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991)).  "'[T]he burden is upon [the

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

defendant] to show that the ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)).

On August 23, 2007, Officer Clyde Lindsey was on patrol in the City of Richmond on property owned by the Richmond Redevelopment and Housing Authority (RRHA). The property was posted against trespassing. Lindsey was in uniform and armed, but his weapon was holstered.

Lindsey approached appellant as he was knocking on the back door of 2311 Rosetta Street. Lindsey asked appellant if he lived at the property. Appellant responded that he did not, but explained that his mother lived there. Lindsey asked appellant to walk to the front of the residence so they could verify that appellant's mother lived there. Appellant complied.

At the front door of the residence, Lindsey knocked several times, but no one answered immediately.[1] Acknowledging that he was not allowed on the property, appellant explained that he was there to take his mother on an errand. Lindsey told appellant that trespassing was prohibited on RRHA property. Lindsey intended to charge appellant with trespassing, but did not advise appellant he was being detained on such a charge. The officer asked appellant for identification, and appellant complied. Lindsey gave the item of identification to another officer to determine whether there were outstanding warrants for appellant's arrest.[2]

In the course of the encounter, appellant's hands were shaking and he appeared nervous. As they waited for the results of the warrant search, appellant took some steps away from Lindsey, giving rise to Lindsey's concern that appellant was going to flee. Lindsey took no action other than

---

[1] After several minutes, a woman opened the door of the residence and said she was appellant's mother and that appellant had come to take her to the store.

[2] At some point during the encounter, the police ascertained appellant had been barred from the property.

to ask appellant if he was carrying anything illegal. Receiving no response, Lindsey asked appellant if he could search him. Appellant responded by asking why the search was necessary since he had given the police his identification. Lindsey explained that the area was known for a high incidence of drug activity, crime, and violence. Lindsey then asked appellant if he would empty his pockets himself if he would not permit a search.[3] Without answering, appellant began removing items from his pockets, with the exception of a small watch pocket in his pants. When Lindsey asked about the pocket appellant had not emptied, he took another step backward. Believing appellant was preparing to flee, Lindsey handcuffed him.

Again focusing on the unemptied watch pocket, Lindsey asked if it contained "illegal contraband." When appellant responded affirmatively, Lindsey reached into the pocket and retrieved a plastic baggy containing twenty-six individually wrapped pieces of cocaine. Lindsey thereupon placed appellant under arrest.

## ANALYSIS

Appellant contends the police detained and searched him in violation of his Fourth Amendment rights. Encounters between the police and citizens "generally fall into one of three categories." McGee, 25 Va. App. at 198, 487 S.E.2d at 261.

> First, there are consensual encounters that do not implicate the Fourth Amendment. Iglesias [v. Commonwealth], 7 Va. App. [93,] 99, 372 S.E.2d [170,] 173 [(1988)]. Next, there are brief investigatory stops, commonly referred to as "Terry" stops, which must be based upon reasonable, articulable suspicion that criminal activity is or may be afoot. United States v. Sokolow, 490 U.S. 1, 7 (1939). Finally, there are "highly intrusive, full-scale arrests" or searches that must be based upon probable cause to believe that a crime has been committed by the suspect. Id.; see also Wechsler v.

---

[3] Lindsey testified he asked appellant, "Do you mind or would you mind emptying your pockets for me?"

Commonwealth, 20 Va. App. 162, 169, 455 S.E.2d 744, 746-47 (1995).

Id.

Consensual encounters need not be justified by any suspicion of criminal activity "'[a]s long as the person to whom questions are put remains free to disregard the questions and walk away[.]'" Blevins v. Commonwealth, 40 Va. App. 412, 421, 579 S.E.2d 658, 662 (2003) (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)), aff'd, 267 Va. 291, 590 S.E.2d 365 (2004). For purposes of the Fourth Amendment, an encounter ceases to be consensual and "'a person is "seized" only when, by means of physical force or show of authority, his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards.'" Baldwin v. Commonwealth, 243 Va. 191, 196, 413 S.E.2d 645, 647 (1992) (quoting Mendenhall, 446 U.S. at 553).

> "Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person."

Id. at 196, 413 S.E.2d at 648 (quoting Mendenhall, 446 U.S. at 554-55).

Lindsey approached appellant with an inquiry about his presence on RRHA property. Appellant readily responded to the officer's inquiries, and cooperated with Lindsey's request that they move to the front door of the residence to determine if appellant's presence there was authorized. To this point in time, the encounter was clearly consensual. Lindsey did not restrain appellant's freedom of movement, nor was there "a show of official authority such that 'a reasonable person would have believed that he was not free to leave.'" Richards v.

- 4 -

Commonwealth, 8 Va. App. 612, 615, 383 S.E.2d 268, 670 (1989) (quoting Mendenhall, 446

U.S. at 554). As noted in Baldwin,

> "[t]he purpose of the Fourth Amendment is not to eliminate all
> contact between the police and the citizenry, but 'to prevent
> arbitrary and oppressive interference by enforcement officials with
> the privacy and personal security of individuals." As long as the
> person to whom questions are put remains free to disregard the
> questions and walk away, there has been no intrusion upon that
> person's liberty or privacy as would under the Constitution require
> some particularized and objective justification.

Baldwin, 243 Va. at 196, 413 S.E.2d at 647 (quoting Mendenhall, 446 U.S. at 553-54).

During the consensual encounter, appellant acknowledged he did not live at the residence

and that he was not authorized to be on RRHA property. Based on those facts, the officer

possessed reasonable articulable suspicion appellant was trespassing, see Code § 18.2-119, and

was entitled to detain appellant to confirm or dispel his suspicion, see Blevins, 40 Va. App. at

422, 579 S.E.2d at 663. Such an investigation would necessarily include the verification of

appellant's identity and a determination of whether he was barred from the premises.[4] "An

officer, while obeying the constitutional requirements of Terry, may stop, question, and

physically detain an individual, if necessary." Buck v. Commonwealth, 20 Va. App. 298, 303,

456 S.E.2d 534, 536 (1995).

Appellant also contends that the subsequent use of handcuffs transformed the detention

into an illegal arrest. We disagree. "Brief, complete deprivations of a suspect's liberty,

including handcuffing, do not 'convert a stop and frisk into an arrest so long as the methods of

restraint used are reasonable to the circumstances.'" Thomas v. Commonwealth, 16 Va. App.

851, 857, 434 S.E.2d 319, 323 (1993) (quoting United States v. Crittendon, 883 F.2d 326, 329

(4th Cir. 1989)), aff'd on reh'g en banc, 18 Va. App. 454, 444 S.E.2d 275 (1994). "When

---

[4] The record does not reveal precisely when Lindsey learned appellant had been officially barred from the property.

'evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria.' The test is whether the police methods were calculated to confirm or dispel the suspicion quickly and with minimal intrusion upon the person detained." Washington v. Commonwealth, 29 Va. App. 5, 15, 509 S.E.2d 512, 517 (1999) (*en banc*) (quoting United States v. Sharpe, 470 U.S. 675, 685 (1985)). See Crittendon, 883 F.2d at 329 (where police officer "could reasonably anticipate that he might be required to go to the aid of his fellow officers [during a Terry stop] and [the suspect] . . . might then attempt to flee," officer lawfully could handcuff the suspect without transforming the encounter into a full scale arrest).

While the police were conducting a brief check of appellant's identification to determine if he was barred from the property and if there were any outstanding arrest warrants for him, appellant exhibited nervous behavior and took steps away from Lindsey in a manner suggesting an intention to flee. Appellant again stepped back from Lindsey when the officer asked him about the contents of a pocket appellant had tried to avoid emptying. The area was known for a high incidence of violence, crime, and drug activity. Moreover, considering appellant's admission that he was not authorized to be on the property, the police had probable cause to arrest appellant for trespassing. Under these circumstances, it was reasonable for Lindsey to place appellant in handcuffs while the officers determined his arrest warrant and barment status. Thus, we find nothing improper about the seizure at issue in this case.

Nor do we conclude the ensuing search of appellant's pocket was unlawful. Lindsey requested appellant to empty his pockets, and appellant voluntarily[5] did so, but left the small

---

[5] Contrary to appellant's assertion at oral argument, the record does not indicate Lindsey coerced appellant into emptying his pocket by threatening to search him if he refused to comply. The officer simply asked appellant, as an alternative to permitting a search, to produce the contents of his pockets himself. In any event, in response to Lindsey's request, appellant did not reveal anything from his pockets that he claims should have been suppressed.

watch pocket in his pants untouched and unemptied. When Lindsey asked if that pocket contained illegal contraband, appellant responded affirmatively. Due to the small size of the watch pocket, it was reasonable for Lindsey to conclude the contraband appellant admitted possessing in the pocket was, in fact, narcotics. At that juncture, Lindsey had probable cause to arrest appellant for the possession of narcotics, and was entitled to search him incident to the arrest. See Virginia v. Moore, 128 S. Ct. 1598, 1608 (2008). It has long been recognized that when the product of the search is not essential to probable cause to arrest, and "the formal arrest follow[s] quickly on the heels of the challenged search . . . ," it is not "particularly important that the search preceded the arrest rather than vice versa." Rawlings v. Kentucky, 448 U.S. 98, 111 (1980). Accordingly, it was lawful for Lindsey to search appellant's pocket and seize the drugs.[6]

### CONCLUSION

For the foregoing reasons, the trial court did not err in denying the motion to suppress. Bass' conviction is affirmed.

Affirmed.

---

[6] Having reached this conclusion, we need not consider the Commonwealth's alternative argument that the drugs were admissible pursuant to the doctrine of inevitable discovery.